Floyd Edgar HUTSON, Appellant

v.

**TRI–COUNTY PROPERTIES, LLC, Appellee.**

No. 2–06–349–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 8, 2007.

Jonathan D. Nelson, Jeffrey M. Travis and Mary Elizabeth Conlon, Travis & Calhoun, Dallas, for Appellant.

Bryan D. Bruner and Christopher L. Stone Bruner, Jamieson & Pappas, L.L.P., Fort Worth, for Appellee.

Panel B: DAUPHINOT, WALKER, and McCOY, JJ.

**OPINION**

LEE ANN DAUPHINOT, Justice.

Appellant Floyd Hutson appeals from the trial court's summary judgment decreeing that Tri–County Properties, LLC is the legal and equitable owner of title to a 48.3 acre tract of real property located in Parker County, Texas ("the Property"). Hutson brings four issues on appeal: (1) section 34.21 of the Texas Tax Code (which incorporates the definition of "residence homestead" contained in Texas Tax Code section 11.13(j)(1)) is unconstitutional because it imposes a more restrictive definition of "homestead" than that contained in the Texas Constitution; (2) the trial court erred by granting summary judgment and holding that, as a matter of law, Hutson did not timely redeem the ownership of his property; (3) the trial court abused its discretion by denying Hutson's motion for new trial based on newly-discovered evidence; and (4) the trial court erred by finding that Tri–County Properties conclu-sively established every element of its claim as a matter of law. Because we hold that Hutson did not preserve his constitutional argument and the trial court properly granted summary judgment for Tri–County, we affirm.

### FACTS AND PROCEDURAL HISTORY

In 1998, Azle ISD filed a tax suit to collect delinquent ad valorem taxes due on the Property, which is appraised for purposes of property taxation by both Parker County's and Tarrant County's appraisal districts. Azle ISD filed the suit against Clarion Trust, the owner of record, for whom Hutson served as the registered agent. Clarion had acquired the Property by a quitclaim deed executed by Hutson in 1996. On March 9, 2001, Clarion deeded the Property back to Hutson and his wife. Three days later, on March 12, 2001, Hutson and his wife conveyed the Property to Hollywood Land Pictures.

The trial court entered judgment on the tax suit on October 29, 2002, in favor of Azle ISD and against Clarion Trust, Hollywood Land Pictures, and the Hutsons. Tri–County bought the Property at a sheriff's tax sale on June 23, 2003. Tri–County recorded the deed on June 26, 2003. On March 4, 2004, Tri–County initiated and prevailed in an eviction proceeding against Huston. Hutson contends that, at that time, he and his wife were co-owners of the Property.

On June 22, 2005, Hutson asserted a right to redeem the Property under the Texas Tax Code and the Texas Constitution. On July 29, 2005, Tri–County filed its original petition for trespass to try title. On May 18, 2006, Tri–County filed a motion for summary judgment on both traditional and no-evidence grounds, arguing that Hutson's redemption was not timely because it was not done within 180 days from the date the purchaser's deed was

filed of record. In his response, Hutson argued that the redemption was timely because it was within the two-year window allowed by the Texas Tax Code for a homestead and/or land designated for agricultural use. The trial court rendered summary judgment for Tri–County.

Hutson then filed a motion for new trial alleging newly-discovered evidence showing that the Property was designated for agricultural use by the Parker County Appraisal District at the time the tax suit was filed. In response, Tri–County argued that the motion was not verified, that Hutson's failure to obtain the evidence until after the summary judgment was due solely to his lack of diligence, and that the evidence did not help Hutson because to have land designated for agricultural use when the property is appraised by more than one appraisal district, the landowner must file an application for the designation with both appraisal districts. The trial court denied the motion. Hutson timely filed this appeal.

### STANDARD OF REVIEW

A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[1] When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[2]

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[3] The motion must specifically state the elements for which there is no evidence.[4] The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[5] When reviewing a no evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.[6] If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no evidence summary judgment is not proper.[7]

When a party moves for summary judgment under both rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of rule 166a(i).[8] If the appellants failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the appellee's summary judgment proof satisfied the less stringent rule 166a(c) burden.[9]

---

1. See TEX.R. CIV. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986).

2. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

3. TEX.R. CIV. P. 166a(i).

4. *Id.; Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002).

5. See TEX.R. CIV. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

6. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).

7. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied).

8. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004).

9. *Id.*

## ANALYSIS

■ In Hutson's first issue, he asserts that Texas Tax Code section 34.21 is unconstitutional because it imposes a more restrictive definition of "homestead" than that contained in the Texas Constitution. Hutson did not make this argument in the trial court, either in response to Tri–County's summary judgment motion or in his motion for new trial. A challenge to the constitutionality of a statute may be waived.[10] A constitutional challenge "not expressly presented to the trial court by written motion, answer or other response to a motion for summary judgment will not be considered on appeal as grounds for reversal."[11] We therefore hold that Hutson has not preserved this issue for appeal. Accordingly, we overrule his first issue.

■ In his second issue, Hutson argues that the trial court erred by finding that he did not timely redeem the ownership of the Property. He contends that the trial court should have applied the property code's definition of "homestead" instead of the tax code's definition of "residence homestead" in determining whether Hutson timely redeemed the Property.

The Texas Constitution allows a party to claim up to 200 acres of rural land as that party's rural "homestead," and generally this land cannot be put into a forced sale to pay the party's debts.[12] The Constitution does not protect land from forced sale for unpaid taxes on that land, and in fact the Constitution expressly directs the Legislature to provide for the sale of land for unpaid taxes.[13] But while the Constitution does not protect property from a forced sale for unpaid taxes, the Constitution does provide that after the sale, the land may be redeemed by the property owner within a set period of time.[14] Generally, that period is six months.[15] But for land that is designated for agricultural use, or land that is used by a party as that party's "residence homestead," the redemption period is two years.[16] In summary, a creditor generally cannot force the sale of a party's land to pay the party's debts to the creditor; however, land may be subjected to a forced sale to pay taxes on the property, but in such a case, the party may redeem the property after the fact. Thus, property is treated differently, with different protections for the owner, depending on whether the threatened sale is for general debts or for taxes.

Hutson argues that the definition of "homestead" in the property code and the definition of "residence homestead" in the tax code are irreconcilable and that "the Texas Constitution requires that, for purposes of forced sale and redemption (though not necessarily tax valuation), the definitions [of 'homestead' and 'residence homestead'] be the same." We disagree. The Constitution itself treats property differently depending on whether it is being sold to pay the owner's debts or to pay taxes on the property. And nothing in the Constitution prevents the Legislature from defining what property may be kept from forced sale differently from property that may be redeemed after the sale, especially when the protection from forced sale (by general creditors) and opportunity for re-

10. *Tex. Dep't of Protective and Regulatory Servs. v. Sherry,* 46 S.W.3d 857, 861 (Tex. 2001).

11. *City of San Antonio v. Schautteet,* 706 S.W.2d 103, 104 (Tex.1986).

12. *See* TEX. CONST. art. XVI, §§ 50, 51.

13. *Id.* art. VIII, § 13, art. XVI, § 50(a)(2).

14. *Id.* art. VIII, § 13.

15. *Id.* art. VIII, § 13(e).

16. *Id.* art. VIII, § 13(c).

demption (after a tax sale) arise in very distinct circumstances.

Because the Constitution does not require that "homestead" and "residence homestead" be defined the same, and because it does not define the term "residence homestead," the Legislature was free to provide such a definition. It did so in Texas Tax Code section 11.13(j)(1).[17] Because the protection given to a "homestead" (the prevention of a forced sale to pay general debts) and the protection given to a "residence homestead" (allowing for redemption after the Constitution-sanctioned tax sale) arise in distinct contexts,[18] the definition of "homestead" in the property code and the definition of "residence homestead" in the tax code are not irreconcilable. The trial court therefore did not err by relying on the definition of "residence homestead" in the tax code rather than the definition of "homestead" found in the property code. We overrule Hutson's second issue.

■ In his fourth issue, Hutson complains of the legal sufficiency of Tri–County's summary judgment evidence on its claim of ownership of the Property.[19] He argues that Tri–County's evidence is only relevant to its ownership of the Property in 2003 and not of its continued ownership in 2006, the time of the summary judgment below.

A legal sufficiency challenge may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.[20] In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.[21]

Tri–County included with its summary judgment motion the sheriff's deed it received in the tax sale; the affidavit of its attorney stating that he had been hired by Tri–County to quiet title to the Property, which it purchased at the tax sale; Hutson's answers to Tri–County's interrogatories in this action; Azle ISD's original petition to foreclose on the Property for unpaid taxes; an excerpt from the Hutsons' testimony at the eviction proceedings; and records from the Tarrant County Appraisal District regarding the Property and showing no designations or exemptions for the Property in 1998.

Texas Tax Code section 34.01 states that a deed from a tax sale vests good and

---

**17.** *See* Tex. Tax Code Ann. § 11.13(j)(1) (Vernon Supp.2007).

**18.** *See Norris v. Thomas,* 215 S.W.3d 851, 858 (Tex.2007) (recognizing that the concept of "homestead" found in the property code differs from the definition "residence homestead" of the tax code and stating that the different concepts of "homestead" used in state statutes and regulations "demonstrat[e] . . . that policymakers are adept at adopting different definitions for different purposes").

**19.** *See Mayes v. Stewart,* 11 S.W.3d 440, 450 (Tex.App.-Houston [14th Dist.] 2000, pet. de-

nied) (a "no evidence" issue is a challenge to the legal sufficiency of the evidence).

**20.** *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361, 362–63 (1960).

**21.** *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005).

perfect title in the purchaser at the sale and that the deed may be impeached only for fraud.[22] Thus, by producing the deed, Tri–County produced some evidence of ownership. Hutson does not argue on appeal that the deed constitutes no evidence of ownership because it was obtained by fraud. Nor does he argue any other grounds why the deed is no evidence to show that Tri–County took ownership of the Property under the tax deed. Instead, he argues that the deed may constitute evidence of Tri–County's ownership in 2003, the time of the tax deed, but it does not constitute evidence of Tri–County's continued ownership of the Property at the time of the summary judgment.

Hutson does not cite any authority for the proposition that a deed evidencing ownership on one date is no evidence of continued ownership at a later date,[23] and we have found none. To the contrary, Texas courts have held that once a status or state of facts, such as property ownership, is established, then in the absence of evidence to the contrary, it is presumed that such status or state of facts continues.[24] Thus, in the absence of summary judgment evidence to the contrary, we presume that Tri–County's ownership of the Property continued from the date of the tax deed to the time of the summary judgment below. We overrule Hutson's fourth issue.

■ Finally, we determine Hutson's third issue. Hutson argues that the trial court abused its discretion by denying his motion for new trial based on newly-discovered, outcome-determinative evidence. The evidence in question is an affidavit from Parker County Appraisal District ("PCAD") employee Eleanore Skidmore stating that, although PCAD cannot provide certified tax certificates or other certified documents for the relevant year, she has reviewed the information located within PCAD and the Property was designated for agricultural use by PCAD in 1998. The motion also attached the affidavit of Hutson's attorney's paralegal. In the affidavit, the paralegal states that in June 2006, she contacted PCAD on multiple occasions and was told by at least two different (unnamed) PCAD employees that because the information relating to tax use designation or exemption status of the Property for 1998 would be located on a computer system that was no longer accessible, "the tax use designation and exemption information for the Property for the year 1998 was not available and there was no way to find out what use designation and/or exemptions were approved or existed for the Property for the year 1998."

■ Whether to grant a new trial based on newly discovered evidence is within the discretion of the trial court.[25] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any

---

22. TEX. TAX CODE § 34.01(n) (Vernon Supp. 2007).

23. *See* TEX.R.APP. P. 38.1(h) (requiring that the appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities"); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.,* 881 S.W.2d 279, 284–85 (Tex.1994) (stating that error may be waived by inadequate briefing).

24. *See Isbell v. Isbell,* 395 S.W.2d 825, 826 (Tex.1965); *Dahlberg v. Holden,* 150 Tex. 179, 185, 238 S.W.2d 699, 703 (Tex.1951); *Brownlee v. Sexton,* 703 S.W.2d 797, 800 (Tex.App.-Dallas 1986, writ refused n.r.e.).

25. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983), *overruled in part on other grounds by Moritz v. Preiss,* 121 S.W.3d 715 (Tex.2003); *Marvelli v. Alston,* 100 S.W.3d 460, 483 (Tex.App.-Fort Worth 2003, pet. denied).

guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.[26]

A party seeking a new trial on the ground of newly discovered evidence must show the following: (1) the evidence has come to light after trial; (2) it was not owing to want of due diligence that the evidence did not come to light sooner; (3) the new evidence is not cumulative; and (4) the evidence is so material that it would likely produce a different result if a new trial were granted.[27] The due diligence requirement has not been met "if the same diligence used to procure the testimony subsequent to trial would have had the same result if exercised prior thereto."[28]

In her affidavit, Skidmore states that she has worked for PCAD for seven years. She therefore worked at PCAD before the summary judgment hearing. Hutson's attorney argued to the trial court that his paralegal had been told by employees at PCAD that the information was unavailable, but he made no explanation to the trial court for why he was able to obtain this information from Skidmore after summary judgment but not before. Nor does Skidmore's affidavit demonstrate any reason why she could not have provided a similar affidavit before summary judgment.

Further, Texas law requires local governments and governmental entities to retain their records in accordance with retention schedules set by the Texas State Library and Archives Commission,[29] and these schedules require that appraisal rolls be kept permanently.[30] Approved applications for exemptions or special appraisal must be kept until superceded or until ten years after the entitlement ends for one-time applications and for ten years or until superceded plus nine years for annually renewed applications.[31] Exemption and special appraisal lists must be retained permanently.[32] Thus, with a diligent search of relevant statutes and regulations, Hutson could have discovered before trial that PCAD was required to have retained the relevant records needed to determine that the Property had been designated for agricultural use in 1998. The trial court did not abuse its discretion by denying the motion for new trial based on the Skidmore affidavit because the court could have properly determined that it was due to a lack of diligence that Hutson did not obtain this evidence before trial. We overrule Hutson's third issue.

## CONCLUSION

Having overruled Hutson's issues, we affirm the trial court's judgment.

**26.** *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

**27.** *Marvelli*, 100 S.W.3d at 483.

**28.** *Hayman v. Dowda*, 233 S.W.2d 466, 471 (Tex.Civ.App.-Fort Worth 1950, no writ); *see also Wilkins v. Royal Indem. Co.*, 592 S.W.2d 64, 69 (Tex.Civ.App.-Tyler 1979, no writ); *Dorbandt v. Jones*, 492 S.W.2d 601, 603 (Tex. Civ.App.-Austin 1973, writ ref'd n.r.e.).

**29.** Tex. Loc. Gov't Code Ann. §§ 201.003(15), 203.042 (Vernon 1999 & Supp.2007).

**30.** *See* Local Schedule Tx, section 1–2 (2d ed.1993), *available at* http://www.tsl.state.tx.us/slrm/recordspubs/tx.html# 1.2 (last visited Nov. 7, 2007).

**31.** *See id.*

**32.** *See id.*