TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-07-00453-CV




Gilbert Limon and Martha Limon, Individually, and d/b/a Limon Hauling Co., Appellants


v.


J.T.B. Services, Inc., Appellee




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NO. D-1-GN-00-000466, HONORABLE PETER M. LOWRY, JUDGE PRESIDING



M E M O R A N D U M O P I N I O N


 Appellants Gilbert Limon and Martha Limon, individually and d/b/a Limon
Hauling Co., (1) sued appellee J.T.B. Services, Inc. ("J.T.B.") for breach of contract and fraud. 
J.T.B. filed a motion for summary judgment, which the trial court granted. Limon Hauling
appeals, arguing that the trial court erred in granting J.T.B.'s motion for summary judgment and
in denying Limon Hauling's counter-motion for summary judgment. Because we hold that
J.T.B. established that it was entitled to judgment as a matter of law, we affirm the order of the
trial court.


BACKGROUND

 J.T.B., a construction and demolition contractor, submitted a bid to the City of
Austin ("the City") for demolition work at Remediation and Demolition Area 8 within Austin-Bergstrom 

International Airport ("Area 8"). Prior to submitting its bid, J.T.B. solicited bids from
subcontractors for hauling debris from Area 8. Limon Hauling submitted a bid for the
subcontract, and J.T.B. used Limon Hauling's bid when submitting its own bid to the City. 

 As part of its bid, J.T.B. was required to demonstrate compliance with the City's
minority-owned and women-owned business enterprises procurement program. (2) J.T.B.
submitted a DBE Goal Compliance Plan detailing what percentage of the work on the contract
would be subcontracted out to DBEs. (3) J.T.B. listed Limon Hauling as the DBE subcontractor
responsible for "transportation and disposal of debris" at a price of $122,408, or 27.3% of the
overall contract price. 

 J.T.B. was awarded the Area 8 project and signed a contract with the City on
February 26, 1999 (the "City contract"). (4) On March 2, 1999, the director of the City's Small and
Minority Business Resources Department sent a letter to Limon Hauling congratulating it on
being awarded a subcontract with J.T.B. J.T.B.'s Project Manager, Steve Traina, testified in his
deposition that J.T.B. also gave Limon Hauling verbal notice that Limon Hauling had been
awarded the subcontract. According to Limon Hauling, it informed J.T.B. that it could start the
job immediately. According to J.T.B., Limon Hauling said it did not have the necessary trucks
and equipment to perform the work. J.T.B. then hired Pulido & Sons Trucking ("Pulido"), who
had also submitted 

a bid but was not a DBE, to perform the hauling work for the Area 8 project. (5) J.T.B. did not
request permission from the City to substitute Pulido for Limon Hauling, as required by city
ordinance. See Austin, Tex., Code of Ordinances § 2.9A-23 (2008) (governing post submission
changes to DBE compliance plan).

 According to Limon Hauling, when J.T.B. did not contact it about starting the job,
Limon Hauling went to the airport job site and discovered that J.T.B. was using Pulido instead. 
Limon Hauling then filed a complaint with the City's Small and Minority Business Resources
Department. On March 25, the City notified J.T.B. that the City contract would be terminated
due to J.T.B.'s failure to comply with the DBE compliance plan--by failing to submit a signed
letter of intent for each of its DBE subcontractors and by substituting Pulido for Limon
Hauling--unless J.T.B. cured the violations within seven days. (6) 

 After being admonished by the City, J.T.B. negotiated a written contract with
Limon Hauling for the "transportation of concrete, asphalt, structural & misc. steel, spoils, base
materials, 

and general demolition debris" ("the Limon subcontract"). The Limon subcontract stated that
Limon Hauling would "serve as the sole transporter for, subcontract, off-site transportation
associated with" the Area 8 project. Limon Hauling was to be paid $57.50 per hour for trucking
services, plus $10 per load for recyclable materials not transported by Limon Hauling. J.T.B.
and Limon Hauling signed the Limon subcontract on March 30, 1999. The next day, they signed
the Letter of Intent (LOI) required by the City, which stated that:




The Prime Concessionaire [J.T.B.] and the DBE listed above [Limon Hauling]
hereby agree that upon the execution of a contract for the above-named project
between the Prime Concessionaire and the City of Austin, entering into a contract,
the DBE will perform the scope of work for the price indicated above.





The "price indicated above" was a lump sum of $122,400.00. The same day that Limon Hauling
signed the LOI, it signed a subcontract with Pulido ("the Pulido subcontract"), under which
Pulido would perform all of Limon Hauling's duties under the Limon subcontract. Limon
Hauling was to pay Pulido $50.00 an hour.

 In February of 2000, Limon Hauling filed suit against J.T.B. for breach of
contract and fraud and against Pulido for breach of contract, tortious interference with a contract,
and fraud. (7) Limon Hauling alleged that J.T.B. continued to use Pulido and pay them directly
after signing the Limon subcontract on March 30 and that it did not pay Limon Hauling all that it
was owed under the Limon subcontract. In July 2004, Pulido and J.T.B. both filed motions for
summary judgment, arguing that the only work that Pulido did for J.T.B. after March 31 was
outside the scope of the 

Limon subcontract. (8) Limon Hauling counter-claimed for summary judgment on its claims and
asserted a new theory of breach--that J.T.B. owed a contractual duty to Limon Hauling before
the Limon subcontract was signed and that J.T.B.'s initial hiring of Pulido was a breach of that
duty. After a hearing, the trial court granted Pulido's motion for summary judgment in
September 2004, but failed to rule on J.T.B.'s motion. Almost a year later, in August 2005, the
trial court granted J.T.B.'s motion for summary judgment and denied Limon Hauling's counter-motion for summary judgment. (9)

 Limon Hauling now appeals the trial court's order granting summary judgment in
favor of J.T.B. and denying Limon Hauling's motion for summary judgment. Limon Hauling
contends that J.T.B. failed to conclusively prove it was entitled to judgment as a matter of law. (10)



STANDARD OF REVIEW

 When a defendant files a traditional motion for summary judgment, it must either:
(1) conclusively disprove at least one element of each of the plaintiff's theories of recovery, or
(2) plead and conclusively establish each essential element of an affirmative defense, thereby
rebutting the plaintiff's cause of action. See Tex. R. Civ. P. 166a; Centeq Realty, Inc. v. Siegler,
899 S.W.2d 195, 197 (Tex. 1995); Holmstrom v. Lee, 26 S.W.3d 526, 530 (Tex. App.--Austin
2000, no pet.). If the defendant's motion and summary-judgment proof facially establish the
right to judgment as a matter of law, the burden shifts to the non-movant plaintiff to raise a
material fact issue sufficient to defeat summary judgment. Centeq Realty, 899 S.W.2d 195 at
197; Holmstrom, 26 S.W.3d at 530. When a plaintiff files a summary judgment motion, it must
conclusively establish all elements of its cause of action. See Tex. R. Civ. P. 166a; Myrad
Props. v. LaSalle Bank Nat'l Ass'n, 252 S.W.3d 605, 615 (Tex. App.--Austin 2008, pet.
granted); Hutson v. Tri-County Props., LLC, 240 S.W.3d 484, 487 (Tex. App.--Fort Worth
2007, pet. denied). A matter is conclusively established if reasonable minds could not differ as
to the conclusion to be drawn from the evidence. See City of Keller v. Wilson, 168 S.W.3d 802,
816 (Tex. 2005); Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc., 644 S.W.2d
443, 446 (Tex. 1982); Ling v. BDA&K Bus. Servs., Inc., 261 S.W.3d 341, 345 (Tex.
App.--Dallas 2008, no pet.).

 Because the propriety of summary judgment is a matter of law, we review the
trial court's decision de novo. Valance Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005). We take as true all evidence favorable to the non-movant and indulge every reasonable
inference and resolve any doubts in the non-movant's favor. TX Far W., Ltd. v. Texas Invs.
Mgmt., 127 S.W.3d 295, 301 (Tex. App.--Austin 2004, no pet.) (citing Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 

548-49 (Tex. 1985)). When, as here, the trial court granted one party's motion and denied the
other's, "the reviewing court should determine all questions presented and render the judgment
that the court below should have rendered." Id. 


DISCUSSION

Breach of Contract

 To recover on a breach of contract claim, Limon Hauling must show: (1) a valid
contract existed; (2) Limon Hauling performed or tendered performance; (3) J.T.B. breached the
contract; and (4) Limon Hauling sustained injury as a result of the breach. See New York Life
Ins. Co. v. Miller, 114 S.W.3d 114, 121 (Tex. App.--Austin 2003, no pet.). J.T.B. argued in its
motion for summary judgment that it could conclusively disprove the third element--that it
breached the contract. (11) See Centeq Realty, 899 S.W.2d at 197 (defendant prevails on summary
judgment by conclusively disproving at least one essential element of cause of action). On
appeal, Limon Hauling alleges three different theories of breach--that J.T.B. breached the
contract when it initially hired Pulido after accepting the bid from Limon Hauling, when it
continued to use Pulido after signing the March 30 subcontract, and when it paid Limon Hauling
less than the $122,400 listed in the LOI. We examine each in turn.



Pre-March 31 Use of Pulido

 J.T.B.'s motion for summary judgment rested on its contention that the only
contract in existence between itself and Limon Hauling was the Limon subcontract that was
signed on March 30, 1999. Indeed, J.T.B. contends that this is the only contract Limon Hauling
pleaded and that Limon Hauling's only pleaded allegations of breach were related to J.T.B.'s
payments to Pulido for work performed after March 31. Limon Hauling, on the other hand,
argues that it pleaded that a contract existed as of February 26, 1999, and that J.T.B. breached
this contract when it initially hired Pulido to work on the Area 8 project. Limon Hauling
contends that J.T.B.'s failure to address these allegations in the motion for summary judgment
means that J.T.B.'s motion must fail. See Tex. R. Civ. P. 166a(c) (requiring a motion for
summary judgment to "state the specific grounds therefor"). The question presented, therefore,
is whether Limon Hauling's pleading can be read to include a claim that J.T.B. breached by
using Pulido prior to the signing of the March 30 Limon subcontract. 

 We construe the pleadings liberally in favor of Limon Hauling, the party against
whom summary judgment is sought. See TX Far W., 127 S.W.3d at 301 (courts should indulge
every reasonable inference in favor of non-movant); Suprise v. Decock, 84 S.W.3d 378, 380
(Tex. App.--Corpus Christi 2002, no pet.) (courts should liberally construe pleadings in favor of
party against whom summary judgment is sought); see also Roark v. Allen, 633 S.W.2d 804, 809
(Tex. 1982) (courts should construe pleadings liberally in favor of pleader). We look to the
pleader's intent and uphold the pleading "even if some element of a cause of action has not been
specifically alleged. Every fact will be supplied that can reasonably be inferred from what is
specifically stated." Roark, 633 S.W.2d at 809 (quoting Gulf, Colo. & Santa Fe Ry. Co. v. Bliss,
368 S.W.2d 594, 599 (Tex. 1963)); see also Rivero v. Blue Keel Funding, L.L.C., 127 S.W.3d
421, 424 (Tex. App.--Dallas 2004, no pet.). Nonetheless, pleadings must give reasonable notice
of the claims asserted. See Tex. R. Civ. P. 47(a); Smithkline Beecham Corp. v. Doe, 903 S.W.2d
347, 354 (Tex. 1995); Rivero v. Blue Keel Funding, L.L.C., 127 S.W.3d 421, 424 (Tex.
App.--Dallas 2004, no pet.). 

 Limon Hauling's second amended pleading, the live pleading at the time
summary judgment was granted, cannot reasonably be read to include an allegation that a
contract existed between Limon Hauling and J.T.B. before the Limon subcontract was signed on
March 30 and that J.T.B. breached this contract when it initially hired Pulido. In fact, Limon
Hauling's pleaded facts specifically note that, "[o]nly after receiving the warning [from the City]
did Defendant JTB agree to sign a Letter of Intent and finalize a contract with Plaintiffs for them
to handle all of the hauling work on the airport project" (emphasis added). While Limon
Hauling's pleaded facts do mention that J.T.B. initially hired Pulido, Limon Hauling does not
refer to this hiring as a breach. In contrast, Limon Hauling pleaded that, "[a]fter March 31,
1999, Defendant JTB knowingly and intentionally violated the terms of the Letter of Intent, the
Compliance Plan, the contract with the City of Austin, the contract with Plaintiffs[,] and [the]
City of Austin MBE/WBE procurement Program Rules by utilizing and paying Defendant Pulido
for hauling work on the airport project." Furthermore, in the section of the petition entitled
"First Cause of Action: Breach of Contract Against Defendant JTB and Claim on Performance
and Payment Bond," Limon Hauling only states that J.T.B. failed to pay Limon Hauling the full
amount due under the Limon subcontract.

 Limon Hauling's second amended petition only gives fair notice that Limon
Hauling is alleging a breach of the subcontract signed on March 30. Because Limon Hauling did
not plead 

a contract or breach prior to that date, J.T.B. was not required to disprove an earlier, unplead
breach in order to prove that it was entitled to judgment as a matter of law. See Tex. R. Civ. P.
47(a); Smithkline Beecham, 903 S.W.2d at 354. 


Post-March 31 Use of Pulido

 Limon Hauling alleges that J.T.B. continued to use Pulido after signing the Limon
subcontract, which made Limon Hauling the "sole transporter" of "concrete, asphalt, structural
[and] misc. steel, spoils, base materials, and general debris" from the Area 8 project. J.T.B.
concedes that if it continued to use Pulido and paid Pulido directly for hauling material from the
Area 8 project site, then it breached the contract. J.T.B. also acknowledges that it made
approximately $33,700 in payments to Pulido for work performed after March 31; however,
J.T.B. contends that all of this work was outside the scope of the Limon subcontract and
therefore not a breach of that contract. (12) Specifically, J.T.B. asserts that the payments it made to
Pulido after March 31 were: reimbursement for dump-site fees; reimbursement for payment to a
third-party contractor who hauled hazardous waste from the Area 8 project site; and hauling
work that Pulido performed pursuant to a different project. Limon Hauling does not contest
J.T.B.'s characterization of the various payments; rather, Limon Hauling contends that the
disposal fee reimbursement and the hauling work were in fact within the scope of the Limon
subcontract.

 According to J.T.B., $7,289 of the $33,700 that it paid Pulido was a
reimbursement for disposal fees that Pulido had to pay at the disposal site when Pulido dumped
the debris it hauled under Pulido's subcontract with Limon Hauling. In support of this
contention, J.T.B. introduced affidavits from Nellie Pulido, Pulido's bookkeeper, and Jim
Bulgier, J.T.B.'s president. J.T.B. also introduced invoices that it received from Pulido which
list $6,704 worth of disposal fee charges incurred between April 27 and June 17, 1999, plus $585
in handling fees and finance charges. (13)

 Limon Hauling contends that, because Pulido was Limon Hauling's
subcontractor, any reimbursement for disposal fees should have flowed through Limon Hauling
and that J.T.B. breached the Limon subcontract when it made the payments directly to Pulido. 
J.T.B. counters that the disposal fees were outside the scope of the Limon subcontract. The
question presented, therefore, is whether disposal fees are within the scope of the work as
described in the Limon subcontract:




Transportation of concrete, asphalt, structural & misc. steel, spoils, base materials,
and general demolition debris to locations as designated by contractor.


Vehicle type shall be trailer end-dump type capable of safely transporting 20-30
cubic yards of materials as specified above.


Subcontractor is responsible for all fuel, road taxes, permits, maintenance, and
repairs for equipment required to perform this scope of work.





Courts enforce an unambiguous contract as written. See Tittizer v. Union Gas Corp., 171
S.W.3d 857, 860 (Tex. 2005); Evergreen Nat'l Indem. Co. v. Tan It All, Inc., 111 S.W.3d 669,
676 (Tex. App.--Austin 2003, no pet.) ("Only the terms of the contract should be consulted
when interpreting an unambiguous contract provision."). The Limon subcontract unambiguously
does not include disposal fees. Therefore, J.T.B. conclusively proved that it did not breach the
Limon subcontract when it reimbursed Pulido for the disposal fees.

 J.T.B. next notes that it paid Pulido $7,745 to haul materials from the airport to
"McMorris Ranch," where J.T.B. was building a dam, and that this work was outside the scope
of the Limon subcontract. Because the Limon subcontract states that Limon Hauling "is to act as
sole transporter for, subcontract, off-site transportation associated with" the Area 8 project, in
order to conclusively prove that these payments were outside the scope of the Limon
subcontract, J.T.B. needed to conclusively prove that this hauling work was unrelated to the Area
8 project.

 J.T.B. supported its claim that the McMorris Ranch job was outside the scope of
the Limon subcontract with the affidavit of Ms. Pulido who averred, "JTB also hired Pulido to
transport materials from the airport to a site where a dam was being built for McMorris. Pulido
received approximately $7,745.46 for its work on this job, which is completely unrelated to the
Project." (14) Attached to Ms. Pulido's affidavits were copies of Pulido's invoices for this hauling
work. One of the invoices lists $6,435 in charges for a "haul off" for the "airport to dam job." 
Another invoice lists $320.46 in charges for hauling materials from "dam job to Texas Disposal
Systems." The affidavit also included a spreadsheet which Ms. Pulido averred contained a true
and accurate explanation of all payments from J.T.B. to Pulido. This table includes the
payments J.T.B. made to Pulido for its hauling work prior to the signing of the Limon
subcontract, the reimbursement for dump fees, the payments to the third-party hazardous waste
hauler, and the payments for the 

McMorris Ranch job, which are described as "not related to Bergstrom Area 8." Taken together,
this evidence is sufficient to prove that the work that Pulido performed hauling materials to
McMorris Ranch was outside the scope of the Limon subcontract, which only covered the Area 8
project.

 Next, J.T.B. asserts that $18,669 of the $33,700 in payments to Pulido were
reimbursements for payments Pulido made to a third-party contractor for hauling hazardous
materials. J.T.B. supported this assertion with affidavits by Jim Bulgier, J.T.B.'s president, and
Nellie Pulido, Pulido's bookkeeper. The Limon subcontract does not list hazardous waste
materials among the material that Limon Hauling was to haul from Area 8. See Tittizer, 171
S.W.3d at 860 (unambiguous contract enforced as written); Evergreen Nat'l Indem. Co., 111
S.W.3d at 676 (same). Limon Hauling did not contest J.T.B.'s evidence regarding this payment
or argue that such a payment would violate the Limon subcontract in the response to J.T.B.'s
summary judgment motion and does not do so on appeal. Therefore, J.T.B. conclusively proved
that the payments for hazardous waste disposal were outside the scope of the Limon subcontract.

 Because J.T.B. presented sufficient evidence to show that all of its payments to
Pulido for work after March 31, 1999 were outside the scope of the Limon subcontract, the
burden then shifted to Limon Hauling to raise a material issue of fact with regard to the breach
element. The only evidence that Limon Hauling introduced in response was an affidavit by
Martha Limon, the owner of Limon Hauling. Regarding the dump fees, Ms. Limon averred that
Pulido "was my subcontractor and did not have authority to contract or bill J.T.B. for dump fees
or any other fees." As we discussed above, we disagree with Ms. Limon's legal conclusion
about the scope of the Limon subcontract, which does not include dump fees. See Mercer v.
Daoran Corp., 676 S.W.2d 580, 583 (Tex. 1984) ("A legal conclusion in an affidavit is
insufficient to raise an issue of fact in response 

to a motion for summary judgment . . . ."); Higbie Roth Constr. Co. v. Houston Shell &
Concrete, 1 S.W.3d 808, 812 (Tex. App.--Houston [1st Dist.] 1999, pet. denied) (while court
must take all factual allegations as true, it is not required to accept as true any legal conclusions
stated in pleadings). Regarding the payments for the McMorris Ranch job, Ms. Limon simply
avers, "To the best of my knowledge, there were not other projects for hauling." This statement
does not contradict J.T.B.'s evidence--it could be true that there was another project unrelated to
the Area 8 project and that Ms. Limon was unaware of that project. 

 J.T.B. facially proved that its payments to Pulido for work performed after March
31 were outside the scope of the Limon subcontract. Limon Hauling failed to raise a material
fact issue sufficient to defeat summary judgment. Therefore, we hold that J.T.B. conclusively
proved that it was entitled to judgment as a matter of law regarding the breach cause of action
that was based on J.T.B.'s post-March 31 use of Pulido.


Payment Dispute

 J.T.B. paid Limon Hauling $57.50 per hour, for a total of $61,583.75. Limon
Hauling alleges that J.T.B. was contractually bound to pay Limon Hauling at least
$122,400--the lump sum contained in the LOI that was signed on March 31, 1999. J.T.B.
counters that there was no minimum lump sum promised in the Limon subcontract that was
signed on March 30, 1999, and that therefore J.T.B. only owes Limon Hauling for the amount of
work actually performed. The question for this Court is whether the lump sum contained in the
LOI is binding and therefore supercedes the payment provision of the Limon subcontract. We
hold that the LOI is not binding and does not supercede the Limon subcontract.


1. We will refer to the appellants collectively as "Limon Hauling," except where it is
necessary to distinguish among individual appellants.
2. Minority-owned and women-owned businesses are also referred to as disadvantaged
business enterprises, or "DBEs."
3. The DBE program, which is administered by the City's Small and Minority Business
Resources Deartment, encourages DBE participation in City contracts by establishing a goal for the
percentage of work on any contract that will be completed by a DBE. See City of Austin, Small &
Minority Bus. Res. Dep't, http://www.ci.austin.tx.us/smbr/default.htm (last visited Mar. 15, 2009);
Austin, Tex., Code of Ordinances § 2.9A-19 (2008) (creating procedure for establishing minimum
DBE participation levels for construction contracts).
4. The City signed the contract on March 6, 1999.
5. Limon Hauling concedes that it did not own the necessary trucks, but contends that it
intended to rent the needed equipment or subcontract out the work. Martha Limon, Limon
Hauling's owner, averred in an affidavit in response to J.T.B.'s motion for summary judgment that
J.T.B. did not even notify Limon Hauling what type of trucks were necessary to perform the work
prior to hiring Pulido.
6. Specifically, the City stated that J.T.B. had failed to:


(1) Submit signed and notarized letters of intent (LOI) between you and each of your
DBE Subcontractors within seven (7) business days upon notification of status as
certified low bidder, and

(2) Obtain consent of the DBE Liaison Officer and Director of the Small and
Minority Business Resources Department for changes to the DBE Goal Complinace
Plan, including substitutions or addition of DBE subcontractors, prior to start of
work. In particular, you substituted Pulido Trucking for G. Limon Hauling without
the prior approval of the City.
7. Limon Hauling also initially filed suit against the City and against National American
Insurance Company as the surety for J.T.B. The claims against these two defendants were dismissed
and are not at issue in this appeal.
8. Pulido filed both traditional and no-evidence summary judgment motions. See Tex. R.
Civ. P. 166a(c), (i). J.T.B. filed a traditional summary judgment motion only. See id. 166a(c).
9. Limon Hauling states in its brief to this Court that the trial court's "ruling failed to mention
or rule on Appellant's Counter-Claim for Summary-Judgment which was heard the same day and
therefore did not dispose of all issues regarding the case." However, the trial court's order granting
summary judgment in favor of J.T.B. stated that "all claims asserted by plaintiffs against J.T.B.
Services, Inc., are denied . . . ." We will treat Limon Hauling's arguments to this Court about why
the trial court should have acted on and granted its motion for summary judgment as an appeal of
the trial court's denial of Limon Hauling's motion for summary judgment.
10. Limon Hauling also suggests that the trial court acted improperly when it granted J.T.B.'s
motion for summary judgment, pointing to the length of time between the hearing on summary
judgment and the court's ruling, the fact that the case was set on the jury docket before summary
judgment was granted, and the fact that counsel for J.T.B. sent a letter to the trial court requesting
a ruling on the motion which Limon Hauling's counsel did not receive because J.T.B.'s counsel
mailed it to the wrong address. Limon Hauling does not cite to any authority to support its
contention that these facts support an inference of impropriety. See Tex. R. App. P. 38.1(i)
(requiring appellant's briefs to include "appropriate citations to authorities and to the record"). We
do not believe these facts support such an inference, and we find nothing in the record to support
Limon Hauling's allegation.
11. On appeal, J.T.B. also argues that Limon Hauling presented no evidence on the damages
claim. However, J.T.B. did not file a no-evidence summary judgment motion with the trial court,
see Tex. R. Civ. P. 166a(i), and did not attempt to conclusively disprove damages below. Therefore,
we will only consider the grounds that J.T.B. raised in its summary judgment motion--that it could
conclusively disprove the breach element. Id. at 166a(c) (requiring summary judgment motions to
state the specific grounds on which judgment is sought and instructing appellate courts to only
consider issues "expressly presented to the trial court by written motion"). 
12. J.T.B. also paid Pulido $13,123.06 for the hauling work that Pulido performed before
March 31, for a total of $46,826.49.
13. Ms. Pulido averred in her affidavit that the Pulido invoices were true and accurate copies
and represented a true and accurate explanation of all payments Pulido received from J.T.B.
14. J.T.B. also introduced the affidavit of Jim Bulgier, who averred, "JTB also hired Pulido
to transport materials from the airport to a site where a dam for McMorris [sic]. Pulido received
$7,745.46 for its work on the McMorris job. This work was outside the scope of the JTB Contract
with Limon."