

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-410-CV

JERREL NEYLAND                                                        APPELLANT

V.

JEANNE RAYMOND                                                       APPELLEE

------------

FROM THE 231ST DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### INTRODUCTION

Appellant Jerrel Neyland appeals from a final decree divorcing him from appellee Jeanne Raymond. In three issues, Neyland argues that the trial court abused its discretion by disproportionately dividing community property in favor of his ex-wife, Raymond. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Neyland and Raymond married in 1987. Raymond filed for divorce in July 2008, and the case came to trial on June 18, 2009. The parties stipulated that they had resolved nearly all issues between them and that the only matter remaining for the court's adjudication was the division of the parties' retirement accounts and their home in Burundi, Africa. The parties both represented to the court that there was no dispute concerning the values of the retirement accounts.[1] After hearing testimony from the parties regarding the value of the Burundi home, the trial court signed a final divorce decree awarding the retirement accounts to Raymond and the Burundi home to Neyland. Neyland filed a motion for new trial, attaching new evidence that he claimed would show that the Burundi home was nearly valueless and that the property division was therefore manifestly unjust. The trial court denied Neyland's motion for new trial, and he now appeals.

## LAW AND APPLICATION TO FACTS

### A.    Standard of Review

In a divorce proceeding, the trial court is charged with dividing the community estate in a "just and right" manner, considering the rights of both

---

[1] According to Raymond's inventory filed with the trial court, the value of her 401(k) plan was $3,567.96, and the value of her 403(k) plan was $4,061.16. Neyland's inventory reported the value of his retirement account as $22,923.96.

parties. Tex. Fam. Code Ann. § 7.001 (Vernon 2006); *Boyd v. Boyd*, 131 S.W.3d 605, 610 (Tex. App.—Fort Worth 2004, no pet.). Trial courts are afforded wide discretion in dividing marital property upon divorce; therefore, a trial court's property division may not be disturbed on appeal unless the complaining party demonstrates from evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Boyd*, 131 S.W.3d at 610.

In a trial to the court in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996); *In re Estate of Rhea*, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no pet.). But when a reporter's record is filed, these implied findings are not conclusive, and an appellant may challenge them by raising issues challenging the sufficiency of the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Estate of Rhea*, 257 S.W.3d at 790. In family law cases, however, the abuse of discretion standard of review overlaps with the traditional sufficiency standard of review; thus, legal and factual insufficiency are not independent reversible grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Boyd*, 131 S.W.3d at 611.

Accordingly, to determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) did the trial court have sufficient evidence upon which to exercise its discretion, and (2) did the trial court err in its application of that discretion? *Id.* The applicable sufficiency review comes into play with regard to the first question. *Id.* We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*; *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986) (stating that, to determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable).

B.    Sufficiency of the Evidence

Neyland addresses the first prong of this inquiry in his first issue by arguing that the trial court had insufficient evidence of the Burundi home's value. The record does not set forth the specific dollar amount that the trial court found the Burundi home to be worth. However, the trial court's judgment implies that it found the home to be sufficiently valuable that its decision to award Neyland the home and Raymond a total of $30,553.08 in the parties' three retirement accounts was a just and right division of property. *See Pharo*, 922 S.W.2d at 948; *Estate of Rhea*, 257 S.W.3d at 790.

4

Anything more than a scintilla of evidence is legally sufficient to support the trial court's implied finding of the Burundi home's value. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). When reviewing an assertion that the evidence is factually insufficient to support the implied finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951).

Raymond's inventory listed the current fair market value of the Burundi home as approximately $50,000 to $70,000. Neyland's inventory listed the current fair market value as "unknown." At trial, Raymond testified that the home is a "very good high quality house." It is "a big home" located "in the capital where it's like three bedrooms and it is in cement and bricks." She explained that the house has "three bedrooms and then one living area and one dining area and then we have a patio attached to it together, and it has three rooms and three bathrooms and then one room for the keeper, the garden, you know." She added that the home had a garage and a garden and that it sits on

5

an acre of land in Burundi's capital in "a very nice area" where government ministers also live. She testified that $70,000 was an accurate value for the property. She also stated that Neyland had rented out the house after she and Neyland had left Burundi. She testified that Neyland's sister had "handled" the business of renting the house for them but that the sister had spent the rental money instead of putting it in the bank for them.

Neyland, for his part, testified that the home was worth only $150. He said that he had built the house himself twenty years ago but that it now had a "big crack." He claimed that he was ready to tear down the house, but he also testified that his mother and other family members were living in the house and had been there "for a long time." He said that his mother had to live in the house because she had a back problem and living in the house was better for her than living in the country.

After reviewing the testimony, we conclude that the trial court had sufficient evidence upon which to exercise its discretion. The parties' evidence on the Burundi home's value differed widely, but viewing it under the appropriate standards of review, we hold that the parties' testimony constituted sufficient evidence upon which the trial court could base its property division. See Cont'l Coffee, 937 S.W.2d at 450; Leitch, 935 S.W.2d at 118; Pool, 715 at 635; Garza, 395 S.W.2d at 823. We overrule Neyland's first issue.

6

C.    Reasonableness of the Trial Court's Exercise of Discretion

Neyland argues in his second issue that the trial court abused its discretion by awarding a disproportionate division of the parties' property—"nearly 100%"—to Raymond.  Again, because the record does not contain the trial court's finding with regard to the Burundi home's value, we cannot determine the relative percentages awarded to the respective parties. We can, however, infer that the trial court found that it was sufficiently valuable so that the property division was fair under the circumstances of this case.  *See Pharo*, 922 S.W.2d at 943; *Estate of Rhea*, 257 S.W.3d at 790.

Even if we assume, as Neyland urges, that the trial court awarded Raymond a disproportionately large share of the marital property, a disproportionate award does not necessarily establish an abuse of discretion. A trial court may award an unequal division of marital property when a reasonable basis exists for doing so.  *Loaiza v. Loaiza*, 130 S.W.3d 894, 899 (Tex. App.—Fort Worth 2004, no pet.).  The court may consider a variety of factors in evaluating the parties' relative positions and crafting a fair—but not necessarily equal—division of property.[2]  The trial court did not have evidence

---

[2] These factors include the spouses' capacities and abilities, benefits that the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, size of the separate estates, and the nature of the property.  *See Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998); *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). Other factors that the trial court may consider are fraud on the community, wasting of community

7

before it relating to most of these factors, but it did have Raymond's testimony that Neyland had rented out the house and that his sister had used rental income from the home. It also had Neyland's testimony of the nature of the home—that he had built the home himself, that his family had lived in the Burundi home "for a long time," and that his mother had stayed there because of her bad back.

In light of the trial court's implied finding that the Burundi home had a sufficient monetary value to render the property division just and right, and in light of the testimony regarding Neyland's family's longtime use of the home without any evidence of reimbursement to the community estate, we hold that Neyland has not shown that the that the division was so unjust and unfair as to constitute an abuse of discretion in this case. *See Jacobs*, 687 S.W.2d at 733; *Boyd*, 131 S.W.3d at 610. We overrule his second issue.

D.    Denial of Motion for New Trial

In his third issue, Neyland argues that the trial court abused its discretion by failing to hold a hearing on his motion for new trial and by denying his motion in spite of the new evidence submitted with it. Whether to grant a new trial based on newly discovered evidence is within the discretion of the trial

---

assets, child custody, and fault in the breakup of the marriage. *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 820–21 (Tex. App.—Fort Worth 2007, no pet.).

court.  *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled in part on other grounds by Moritz v. Preiss*, 121 S.W.3d 715 (Tex. 2003); *Marvelli v. Alston*, 100 S.W.3d 460, 483 (Tex. App.—Fort Worth 2003, pet. denied).  A party seeking a new trial on the ground of newly discovered evidence must show that (1) the evidence has come to light after trial, (2) it was not owing to want of due diligence that the evidence did not come to light sooner, (3) the new evidence is not cumulative, and (4) the evidence is so material that it would likely produce a different result if a new trial were granted.  *Marvelli*, 100 S.W.3d at 483.  The due diligence requirement has not been met if the same diligence used to obtain the evidence after trial would have had the same result if exercised before trial.  *Hutson v. Tri-County Properties, LLC*, 240 S.W.3d 484, 491 (Tex. App.—Fort Worth 2007, pet. denied).

Neyland's motion for new trial attached printouts from various internet websites regarding Burundi's financial condition, gross national product, and per capita income, as well as a currency converter with the exchange rate between the Burundi franc and the United States dollar.  Neyland's motion does not contain any contention that these printouts were unavailable at the time of trial, so he has failed to satisfy the first requirement of obtaining a new trial as to this evidence.  *See Marvelli*, 100 S.W.3d at 483.

9

In addition to the internet printouts, Neyland attached the deed to the Burundi property, a real estate appraisal of the property, and photographs of the home. Neyland claimed in his motion for new trial that the deed had become available only after the trial court had heard the evidence and that the real estate appraisal had been unobtainable prior to trial. He provides no further explanation regarding why the evidence was not available before trial, and he does not offer any evidence showing that he exercised due diligence in attempting to procure this evidence sooner. Moreover, he testified at trial that "the house in Burundi, the value is almost zero. I'm ready to bring -- to do everything to present, Your Honor, until you see the house." He testified that he had called his sister to find out the exchange rate, and he told the court, "I can call my sister to take the picture of the house."

Neyland's motion for new trial does not explain why he could not have already called his sister or otherwise obtained the new evidence before the date of trial. Neyland has therefore failed to demonstrate that it was not owing to want of due diligence that the evidence did not come his attention sooner. *See Hutson,* 240 S.W.3d at 491; *Marvelli*, 100 S.W.3d at 483. We hold that the trial court did not abuse its discretion by denying Neyland's motion for new trial. *See Jackson*, 660 S.W.2d at 809; *Marvelli*, 100 S.W.3d at 483.

Neyland also complains that the trial court abused its discretion by failing to hold a hearing on his motion for new trial. Citing *Hensley v. Salinas*, 583

S.W.2d 617, 618 (Tex. 1979), Neyland asserts that when a party files a motion for new trial with a sworn affidavit on the grounds of newly discovered evidence, the trial court must hold a hearing to receive the evidence. But *Hensley* does not require a hearing on *every* motion for new trial that claims newly discovered evidence; it states only that "when a motion presents a question of fact upon which evidence must be heard, the trial court is obligated to hear such evidence when the Motion for New Trial alleges facts, which if true, would entitle the movant to a new trial and when a hearing for such purpose is properly requested." *Id.* Here, Neyland's motion contained no showing of due diligence and therefore raised no question of fact regarding his entitlement to a new trial. Accordingly, the trial court was not required to hold a hearing on his motion, and it therefore did not abuse its discretion by ruling on the motion without a hearing. We overrule Neyland's third issue.

## CONCLUSION

Having overruled Neyland's three issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER and MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: August 31, 2010

11