

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00227-CV

PETER A. OLDENBURG                                                                    APPELLANT

V.

LISA G. OLDENBURG                                                                      APPELLEE

----------

### FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In two issues, Appellant Peter A. Oldenburg appeals the trial court's property division in this divorce proceeding. We affirm.

## II. Factual and Procedural Background

Peter and Appellee Lisa G. Oldenburg were married December 30, 2005. They ceased to live together as husband and wife in April 2010. Peter petitioned

---

[1]*See* Tex. R. App. P. 47.4.

for divorce, Lisa counter-petitioned, and both parties agreed that the marriage was insupportable due to discord or conflict of personalities. Before trial, they agreed on the division of nearly all of the personal property. No realty was involved in the divorce.

At the hearing finalizing the divorce proceedings, Peter and Lisa both explicitly agreed that the only issues were the disposition of the 2004 Ford Ranger pick-up truck and a $3,800 debt on the truck and possession of the Shih Tzu dog.[2]

With regard to the debt secured by the truck, Peter testified that Lisa had taken out a loan to purchase the truck using $5,000—which she had earned during the marriage—as collateral from her account at EDS Credit Union. The truck was in his name, and they had had it for around two and a half years. Peter subsequently took out a $4,000 loan in his name, using the truck as collateral. He said that he gave the $4,000 to Lisa so that she could pay off the truck loan and close out her savings account.

---

[2]Peter's attorney stated, after the parties recited the agreed property division into the record, and before any evidence was heard, "Oh, there's a 1986 Harley-Davidson motorcycle that [Peter] is going to have." During Peter's direct examination, he gave the following testimony:

> Q. Okay. The first issue would be the 2004 Ford Ranger pickup. Okay? Now, you've agreed that your wife may have that, and you got the Harley; is that correct?
>
> A. Yes.

During cross-examination, however, Peter testified that he used around $1,200 of the loan proceeds to make a house payment and then gave what remained to Lisa. He agreed that the check Lisa used to pay for the truck was for $5,000 from an EDS Credit Union account. Peter also testified that his father had given him the money to purchase the motorcycle, that it was worth around $6,500, and that he had never had a note on it.

Lisa testified that she was unaware at the time that Peter had taken out the $4,000 loan using the truck as collateral and that she did not receive any of the loan proceeds. She said that Peter later told her that some of the loan proceeds went to his father because he had given Peter some money to pay off an old debt to raise his credit score so that Peter could get a loan at the bank.

With respect to the dog, Peter testified that he had been the dog's primary caregiver and that he took the dog to work with him every day, but he also testified that Lisa had found the dog on the SPCA website, purchased it, and picked it up four years before the trial. On cross-examination, he admitted that he may have written letters to Lisa saying that he would never take the dog away from her.

Lisa testified that she found the dog at the SPCA in 2006, that she adopted it, and that it had been her constant companion ever since, riding in the car with her and sleeping in her bed. She said that she walked and fed the dog and took it to the vet and groomer, that the dog was like her child, and that she provided everything that happened with the dog concerning its care, maintenance, and

3

upkeep.  She admitted during cross-examination that she did not know who had taken care of the dog while she was confined in county jail for forty days for assault.

The trial court awarded the dog and truck to Lisa and made Peter responsible for the note on the truck.  This appeal followed.

### III.  Property Division

In two issues, Peter complains that the trial court mischaracterized the motorcycle as community property and abused its discretion when it failed to divide the community assets and liabilities in a fair and equitable manner.

### A.  Standard of Review

In a divorce proceeding, the trial court is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties.  Tex. Fam. Code Ann. § 7.001 (West 2006); *Neyland v. Raymond*, 324 S.W.3d 646, 649 (Tex. App.—Fort Worth 2010, no pet.).  Trial courts are afforded wide discretion in dividing marital property upon divorce; therefore, a trial court's property division may not be disturbed on appeal unless the complaining party demonstrates from evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion.  *Neyland*, 324 S.W.3d at 649 (citing *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985)); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985) (stating that, to determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other

words, whether the act was arbitrary or unreasonable), *cert. denied*, 476 U.S. 1159 (1986).

## B. Property Division

In his first issue, Peter complains that "[t]he award of the Harley Davidson motorcycle as an item of community property is against the great weight and preponderance of the evidence. Although the award is to Peter, all evidence is that the purchase money for the motorcycle was from Peter's father." Peter's position is that only by wrongly characterizing the motorcycle as community property could the trial court award the truck and dog to Lisa.

In his second issue, Peter argues that "[t]he Trial Court abused its discretion when it failed to divide the community assets and liabilities in a fair and equitable manner, based upon the facts and circumstances presented as evidence in this case." Specifically, he complains that he should not have been awarded the $3,800 note. Because Peter's second issue is dispositive, we will address it first.

The trial court decided only the ownership of the dog and the note on the truck, stating in its ruling, "there being an agreement that the truck goes to [Lisa]." There was conflicting testimony as to who took care of the dog, but it was undisputed that Lisa selected the dog, adopted it, brought it home, and had at least a part in its care. Based on this evidence, the trial court did not abuse its discretion when it awarded the dog to Lisa.

With regard to the note secured by the truck, Peter testified that the truck was purchased in his name with funds secured by Lisa's savings account and that he subsequently took out a loan against the truck in his name. He stated both that he gave all of the proceeds to Lisa and that he applied part of the proceeds to the mortgage and then gave the balance to Lisa. Lisa testified that she never received any of the loan proceeds from Peter, that she did not know about the loan when it occurred, and that she later learned of the loan and that part of its proceeds were given to Peter's father.

The trial court could have reasonably concluded from the evidence that the truck was purchased for $5,000 with community funds by Lisa, with each party owning half of the truck. The truck's depreciated value at the time of trial is not in the record. The $4,000 loan proceeds were also owned equally by each party, but if the trial court chose to believe Lisa, she did not receive any of the proceeds from the $4,000 loan. At the time of the divorce, the note balance was $3,800. The trial court awarded the $3,800 note to Peter—the individual who took the note out in his name—while awarding the used truck of unknown value to Lisa.

Under these circumstances, we cannot say that the trial court abused its discretion by awarding to Lisa the truck of unknown value and the note to Peter for the loan he took out in his name. And because the trial court did not abuse its discretion with regard to the disposition of the dog, truck, and note, the trial court's characterization of the motorcycle as community or separate property is of no moment. *See Boyd v. Boyd*, 131 S.W.3d 605, 610 (Tex. App.—Fort Worth

6

2004, no pet.) ("[W]e will reverse the cause only if the record demonstrates that the trial court clearly abused its discretion, and the error materially affected the just and right division of the community estate.").  We overrule both of Peter's issues.

## IV.  Conclusion

Having overruled both of Peter's issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DELIVERED:  March 15, 2012