**Opinion issued February 7, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00639-CV

———————————

**JAMES RAY HARRISON, Appellant**

**V.**

**MELINDA FAYE HARRISON, Appellee**

---

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Case No. 25757**

---

## MEMORANDUM OPINION

James Ray Harrison appeals from a final decree of divorce. After Melinda Faye Harrison filed a petition for divorce from James, the trial court ordered temporary child support in the amount of $700 per month until trial. After a bench trial, the trial court granted the divorce and, as relevant to this appeal, found that

James was intentionally unemployed or underemployed, ordered James to pay child support in the amount of $400 per month, and awarded the community interest in Melinda's ExxonMobil Savings Plan to Melinda, to be set aside for the support of the parties' child. James contends the trial court erred by ordering monthly child support in excess of the statutory guidelines and awarding Melinda the entire community interest in the ExxonMobil savings plan. We affirm.

## Background

James and Melinda were married in 1992 and have a son. Melinda filed for divorce in July 2010. The trial court held a temporary orders hearing in September 2010. At that hearing, James testified that he sustained a back injury in a car accident in October 2009. As a result, he was unable to work at his business, a mortuary services company. James testified that he needed back surgery before he could return to work, but his health insurance company would not pay for it. James testified that, because he was unable to work, he had no income. James also introduced his and Melinda's joint income tax return for 2009, which showed that his business operated at a loss in 2009. Melinda, however, testified that James had been working since the accident. Another witness also testified that he had seen James working during the summer of 2010. Melinda testified that in the year preceding the temporary orders hearing, James had withdrawn $50,000 from an annuity he held with Farm Bureau Insurance. After hearing the evidence, the trial

2

court ordered James to pay monthly child support in the amount of $700 until entry of a final divorce decree.

At the June 2011 bench trial, James and Melinda presented conflicting evidence about James's earnings and ability to work. James testified that his doctor had placed him on lifting restrictions because of his back injury and the restrictions prevented him from working in mortuary services. James also testified that no one would hire him with the lifting restriction and that he was unable to work until he could have back surgery. James was not receiving social security disability payments. James asserted that his only income was $1,000 per month in benefits from a disability insurance policy. But, on cross examination, James admitted that he had worked since the October 2009 car accident, albeit only when an assistant was available to help with lifting. James also testified that he paid monthly bills of at least $1,695 on his Suburban, $586 on the commercial building that housed his business, $300 for fuel for the Suburban, and $50 for a cell phone. He also testified that the woman with whom he resided paid some of his bills, as did his father.

Melinda testified that James was not physically unable to work. Melinda testified that James frequently rode a motorcycle, lifted the children of the woman with whom he resided into his Suburban, and had worked since his accident. She opined that James was able to do whatever he wanted to do and, although he

3

always seemed able to pay for whatever he felt important, he had not been paying the temporary support the trial court had ordered. Melinda's documentary evidence showed that in 2010, James withdrew a total of $24,000, after taxes, from annuities. Melinda also presented evidence that James paid off a $2,000 "marker" to a Louisiana casino during the pendency of the divorce proceedings.

The trial court issued a final decree of divorce in July 2011. The trial court incorporated the $700 monthly temporary support payment until the date of the decree and ordered James to pay $400 per month in child support from the date of the decree forward. The trial court ordered Melinda to provide health insurance for their child, which cost $127.48 per month. The trial court also divided the parties' community estate, awarding Melinda the couple's home and the outstanding indebtedness on it, one of their Suburbans and indebtedness on it, her credit card debt, and the entire community interest in an ExxonMobil Savings Plan. James received the commercial building that housed his mortuary business and its related indebtedness, a Suburban and its indebtedness, a Harley-Davidson motorcycle, and his share of the community debt.

**Child Support**

In his first, third, and fifth issues, James contends that the trial court erred by awarding child support twenty-five times higher than the statutory guidelines set forth in the Texas Family Code. James also argues that, because his monthly net

4

resources were, at most, $1,000, the trial court deviated from the support guidelines but failed to make the required findings in support of that deviation. *See* TEX. FAM. CODE ANN. § 154.130(a), (b) (West 2008 & Supp. 2012). Alternatively, James contends that there was no evidence of his wage or salary income and therefore the trial court was required to set child support based on the federal minimum wage. *See id.* § 154.068 (West 2008).

## A.    Standard of Review

A trial court has discretion to set child support within the parameters provided by the Family Code. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). "A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion." *Id.* (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). A trial court abuses its discretion when it acts arbitrarily or unreasonably or by failing to analyze or apply the law correctly. *Id.* In child-support contests, sufficiency of the evidence challenges are not independent issues, but are "incorporated into an abuse of discretion determination." *Moreno v. Perez*, 363 S.W.3d 725, 735 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *McGuire v. McGuire*, 4 S.W.3d 382, 387 n.2 (Tex. App.—Houston [1st Dist.] 1999, no pet.)).

In reviewing the sufficiency of the evidence to support the trial court's exercise of its discretion, we consider "(1) whether the trial court had sufficient

information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion." *Id.* (citing *McGuire*, 4 S.W.3d at 387 n.2). A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support its order, or when its decision is based on conflicting evidence. *Id.*; *Newberry v. Bohn–Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We review the evidence in the light most favorable to the trial court's order and indulge all reasonable inferences in support of the order. *Kendall v. Kendall*, 340 S.W.3d 483, 507 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Chapter 154 of the Texas Family Code governs child support proceedings and sets forth guidelines to apply in determining an equitable amount of child support. *See* TEX. FAM. CODE ANN. §§ 154.001–.309 (West 2008 & Supp. 2011). An order to make support payments established by the guidelines "is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child." *Id.* § 154.122(a) (West 2008). As applicable to this case, the guidelines provide for twenty percent of the obligor's net resources to be paid as child support. *Id.* § 154.125(b) (West 2008 & Supp. 2012). A trial court may deviate from the guidelines, but if it does so, it "shall make findings" required by section 154.130(b). *Id.* § 154.130(a).

6

The Family Code sets forth the manner in which the trial court must calculate net resources. *Id.* § 154.062(a). "Net resources" includes all wage and salary income, self-employment income, and all other income actually received, such as gifts, less certain specified amounts, such as social security taxes and income taxes. *Id.* § 154.062(b), (d). "In the absence of evidence of the wage and salary income of a party, the court shall presume that the party has wages or salary equal to the federal minimum wage for a 40 hour week." TEX. FAM. CODE ANN. § 154.068 (West 2008). If the trial court finds that an obligor is intentionally unemployed or underemployed, the trial court may apply the support guidelines to the earning potential of the obligor instead of the net resources. *Id.* § 154.066.

## B.    Temporary Support Order for $700 per Month

James contends that the trial court abused its discretion by ordering him to pay $700 per month in temporary child support because that amount exceeds the twenty percent of his net resources provided for by the Texas Family Code. For the $700 to comply with the statutory guidelines, James's net resources would have to equal $3,500 per month ($700 is twenty percent of $3,500), or $42,000 per year. *See* TEX. FAM. CODE ANN. § 154.125(b). James asserts that his net income at the time of the temporary orders hearing was $0. He contends that his testimony at the temporary orders hearing demonstrated that he was unable to work and was not receiving disability benefits or insurance. But James does not address the contrary

7

evidence. Melinda testified that in the year preceding the hearing James had withdrawn approximately $50,000 from an annuity he had with Farm Bureau Insurance.[1] She also testified that James had been working since his accident in October 2009, although she could not say what his income from that work was. Another witness testified that he saw James performing mortuary work during the summer of 2010. The trial court could have disbelieved James and believed Melinda, finding that James was able to work. Some evidence shows that James had withdrawn approximately $50,000 in the year preceding the hearing and that James was not only able to work but, in fact, had been working. Therefore, the trial court could have found that James's net resources exceeded $3,500 monthly ($42,000 yearly). Accordingly, we conclude that the trial court did not abuse its discretion in ordering temporary child support in the amount of $700 per month. *See Newberry*, 146 S.W.3d at 235 (holding some probative evidence existed to support trial court's determination that husband earned more than $6,000 per month because wife testified that husband earned $150,000 per year); *Hardin v.*

---

[1] We note that "net resources" includes "interest [and] dividends" but not a "return of principal or capital." TEX. FAM. CODE ANN. § 154.062(b), (c). Neither party presented evidence of whether the $50,000 withdrawn from the annuity represented interest or dividends, a return of principal or capital, or some mix of the two. But the standard of review requires us to view the evidence in the light most favorable to the trial court's judgment and draw all reasonable inferences in favor of the trial court's judgment. Accordingly, we consider the withdrawals from the Farm Bureau Insurance annuity as net resources.

*Hardin*, 161 S.W.3d 14, 23 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (where wife testified husband had worked jobs and did not report income and husband admitted that he had not always reported all his income, trial court was free to disbelieve husband's testimony of his net resources); *Pavon v. Hernandez*, No. 14-10-00059-CV, 2011 WL 1631790, at *3 (Tex. App.—Houston [14th Dist.] Apr. 28, 2011, no pet.) (mem. op.) (holding trial court did not abuse discretion in finding net resources of $3,800 per month where obligor testified he earned only $500 per month but obligor's adult daughter testified obligor owned two barbershops, a rental home, and additional rental properties in Honduras); *see also Niskar v. Niskar*, 136 S.W.3d 749, 759 (Tex. App.—Dallas 2004, no pet.) (holding trial court did not abuse its discretion in ordering child support slightly higher than statutory guidelines when record supported reasonable inference that obligor had undisclosed income).

We overrule James's first, third, and fifth issues as they relate to the temporary child support order.

## C. Final Support Order for $400 per Month

James also contends the trial court abused its discretion by ordering child support in the amount of $400 per month from the date of the final decree of divorce. James argues that the evidence at trial demonstrated that his net resources were at most $1,000 per month, and, based on that figure, the application of the

9

child support guidelines should result in a child-support payment of $200 per month. James contends the $400 award shows the trial court deviated from the guidelines without making the necessary findings. But we conclude there was no such deviation and the trial court could have concluded that James's net resources were $2,000 per month, or $24,000 yearly, and thus ordered a within-guideline award of $400 per month.

James points to his own testimony that he was unable to work due to a back injury and that his only income was $1,000 per month in disability insurance benefits. But the record contains contrary evidence from which the trial court could have concluded James's net resources actually were higher, and the standard of review requires us to credit that evidence. *See Kendall*, 340 S.W.3d at 507. In addition to the $1,000 per month from his disability insurance, Melinda testified that James worked after his accident in October 2009. James also admitted that he had worked occasionally since the accident. James testified that he paid bills in the amount of $1,695 per month. He also testified that the woman with whom he resided paid some of his bills, as did his father. There was also evidence that James paid off a $2,000 "marker" to a Louisiana casino during the pendency of the divorce proceedings. Finally, evidence showed that during 2010, James received $24,000 from his annuities after federal taxes were withheld. Viewing this evidence in the light most favorable to the trial court's judgment, we conclude that

10

some evidence supports the trial court's implied finding that James's net resources amounted to at least $24,000 per year, or $2,000 per month. Accordingly, we hold (1) that the trial court did not abuse its discretion in ordering James to pay twenty percent of $2,000, or $400, per month in child support from the date of the final decree forward and (2) that such award was within the Family Code's child support guidelines. *See* TEX. FAM. CODE ANN. § 154.125(b); *Moreno*, 363 S.W.3d at 735; *Niskar*, 136 S.W.3d at 759.

We overrule James's first, third, and fifth issues as they relate to the final child support order.

## D. Deviation from the Statutory Support Guidelines

In his third issue, James contends the trial court erred by deviating from the statutory child support guidelines and by failing to state the reason it deviated from the guidelines. The Family Code provides that any deviation from the support guidelines must be supported by specific findings. TEX. FAM. CODE ANN. § 154.130(b). James's argument on this issue is premised on his contention that the trial court in fact deviated from the statutory guidelines—in this case, twenty percent of James's net resources. As discussed above, James's premise fails: the evidence is sufficient to show that the trial court adhered to the guidelines and ordered James to pay twenty percent of his net resources as child support. Because we conclude that there was no deviation from the child support guidelines, we

necessarily reject James's argument that the trial court committed error by deviating from the guidelines and failing to make specific findings to support a deviation.

We overrule James's third issue.

## E.     Intentional Unemployment or Underemployment

In his fourth issue, James contends the trial court erred by finding that he was intentionally unemployed or underemployed.[2]   James argues this erroneous finding led the trial court to apply the support guidelines to his earning potential rather than his actual net resources.  But, as discussed above, the trial court's child support orders are proper based on the evidence of James's actual net resources without regard to James's earning potential or whether James was intentionally unemployed or underemployed.  *See* TEX. FAM. CODE ANN. § 154.066.   These contentions likewise rest on the faulty premise that the trial court was not following the statutory guidelines, and accordingly, we reject them.

Within this issue James also argues the trial court erred by failing to apply a statutory presumption that his net resources were consistent with the federal minimum wage.  "In the absence of evidence of the wage and salary income of a party, the court shall presume that the party has wages or salary equal to the federal

---

[2]     Within this issue, James raises two sub-arguments: the trial court "improperly disregarded" James's medical evidence and the trial court abused its discretion in deeming admissions against James.

12

minimum wage for a 40–hour week." TEX. FAM. CODE ANN. § 154.068. The express language of the statute provides that it applies "[i]n the absence of evidence of wage and salary income." As discussed above, the trial court was presented with some evidence that James earned wage and salary income during the relevant timeframe; in other words, there was no "absence of evidence." A presumption that James earned only the federal minimum wage, therefore, is inapplicable.

We overrule James's fourth issue.

### Award of the ExxonMobil Savings Plan to Melinda

In his second issue, James contends that the trial court erred by awarding to Melinda the entire community interest in Melinda's ExxonMobil Savings Plan. In his sixth issue, James asserts that if this court reverses the lump sum award and "restore[s] it to James'[s] side of the property division" the trial court's property division will be "just and right."

"In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001 (West 2008). A trial court has wide discretion in making a just and right division. *See, e.g.*, *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *Graves v. Tomlinson*, 329 S.W.3d 128, 153 (Tex. App.—Houston [14th Dist.]

13

2010, pet. denied). In making the division, the trial court may consider such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property. *Murff*, 615 S.W.2d at 699; *see also Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998) (citing *Murff* and noting trial court may consider "many factors," including "waste of community assets"); *Vannerson v. Vannerson*, 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (stating another relevant factor in division of community estate is which party receives primary custody of child); *Neyland v. Raymond*, 324 S.W.3d 646, 651 n.2 (Tex. App.—Fort Worth 2010, no pet.) (same).

James contends that the Savings Plan should have been awarded to him but was instead awarded to Melinda as a lump sum payment of James's child support obligations. This contention, however, is at odds with the plain language of the decree. The trial court awarded the entire Savings Plan to Melinda as her "sole and separate property" and divested James "of all right, title, interest, and claim in and to" the Savings Plan. This language demonstrates that the award of the Savings Plan was part of the trial court's division of the community estate. Nothing supports James's theory the trial court awarded it to satisfy James's child support

14

obligation. The decree unambiguously awards Melinda the entire Savings Plan as her sole and separate property before it specifies that the Savings Plan is "to be administered by [Melinda] for the support of the child pursuant to Section 154.003 (4&5)." The support obligation the language creates then belongs to Melinda, not James. *See* TEX. FAM. CODE ANN. § 154.001 (West 2008) (trial court "may order either or both parents to support a child in the manner specified by the order"). In short, neither the record nor the language of the decree provides any support for James's contention that the trial court awarded James's portion of the community interest in the Savings Plan to Melinda as a lump sum payment of *his* support obligations. Rather, the decree awards Melinda the entire community interest in the Savings Plan and then requires her to use it for the support of the child.

James also cursorily claims the trial court erred in awarding the entire Savings Plan to Melinda. However, James does not specify any basis for that claim and does not provide any argument or analysis of his claim in context of the evidence of the entire estate at trial. The Savings Plan, which showed a balance of $155,000, was a portion of the community property subject to a just and right division. Before the trial court made a division of the entire community estate, James and Melinda each had a fifty percent interest in the Savings Plan, or $77,500. Additionally, evidence before the trial court showed a loan against the Plan, reducing the equity to approximately $106,000 and each spouse's separate

15

interest to $53,000. In dividing the community's real property, the trial court awarded Melinda the home and James the commercial building. Although the parties disputed the value of the home, the trial court heard evidence that the home was worth approximately $186,000, with $64,000 indebtedness, leaving equity of approximately $122,000. With respect to the commercial building, James testified he was negotiating a sale with a potential buyer for $239,000. The outstanding indebtedness on the commercial building was approximately $42,000, leaving equity of approximately $197,000, or about $75,000 more than the equity in the home. The trial court's division of the parties' real property thus favors James, which suggests that the trial court awarded the entire Savings Plan to Melinda for the purpose of equalizing the overall division.

Other factors also support the award of the Savings Plan to Melinda. In its findings of fact and conclusions of law, the trial court specifically found that James wasted $64,912.31 in community assets during the marriage. James does not challenge that finding, and, therefore, it is binding on appeal. *See Beal Bank, SSB v. Biggers*, 227 S.W.3d 187, 191 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997)). This unchallenged finding independently supports the trial court's award of the entire Savings Plan to Melinda. *See Schlueter*, 975 S.W.2d at 589 (stating "waste of community assets" is relevant factor for court to consider in dividing

16

community estate). Additionally, Melinda was awarded custody of their son. *See Vannerson*, 857 S.W.2d at 669; *Neyland*, 324 S.W.3d at 651 n.2.

James nevertheless identifies evidence that, he claims, supports an award of the entire Savings Plan to him. Primarily, he relies on the fact that, at the time of trial, he was unable to work, earning only $1,000 per month in disability insurance payments, while Melinda had an annual salary of $92,000. But the trial court was presented with conflicting evidence, as explained above. James also argues that the evidence shows he "put [Melinda] through school," allowing her an increased earning capacity. Melinda acknowledged that James did provide some "support" while she was in school. She explained, however, that she had her own source of income and was not supported solely by James. The evidence does not conclusively establish that James paid for tuition or otherwise "put [Melinda] through school."

The evidence James identifies in support of his arguments on appeal conflicts with other evidence presented at trial. A trial court does not abuse its discretion when it bases its decision upon conflicting evidence. *See Newberry*, 146 S.W.3d at 235; *see also Zwick v. Zwick*, No. 2-08-182-CV, 2009 WL 1564928, at *4 (Tex. App.—Fort Worth June 4, 2009, no pet.) (mem. op.) (citing *In re Barber,* 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding)) (holding no abuse of discretion in division of community estate where parties presented conflicting

17

testimony).  Because some evidence supports the award of James's presumptive share of the community interest in the ExxonMobil Savings Plan to Melinda, we hold that the trial court did not abuse its discretion in dividing the community estate as it did.

We overrule James's second and sixth issues.

## Conclusion

We affirm the trial court's judgment.  All pending motions are denied as moot.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

18