**Opinion filed November 14, 2019**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00164-CV

_____

## IN THE INTEREST OF K.D. AND V.P.D., CHILDREN

**On Appeal from the 1st Multicounty Court at Law**
**Nolan County, Texas**
**Trial Court Cause No. CC-7667**

### M E M O R A N D U M   O P I N I O N

This appeal stems from the trial court's order by which it terminated the parental rights of the mothers of K.D. and V.P.D. and the father of both children. Only the father appealed. In two issues, Appellant challenges the legal and factual sufficiency of the evidence with respect to the children's best interest and asserts that the trial court abused its discretion when it did not conduct a hearing on Appellant's motion for new trial. We affirm.

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in

Section 161.001(b)(1)(A)–(U) of the Texas Family Code and that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established." *Id.* § 101.007 (West 2019).

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (D) and (E). Specifically, the trial court found that Appellant (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, *see id.* § 161.001(b)(1)(D); and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, *see id.* § 161.001(b)(1)(E). The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the best interest of the children. *See id.* § 161.001(b)(2).

In his first issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's best interest finding; he does not challenge the sufficiency of the evidence to support the findings under subsections (D) and (E). To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)); *In re M.G.*, No. 11-18-00351-CV, 2019 WL 2426775, at *1 (Tex. App.—Eastland June 11, 2019, no pet.). To determine whether the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably

form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *M.G.*, 2019 WL 2426775, at *1. We note that the trier of fact is the sole judge of the credibility of the witnesses at trial and that we are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573.

The determination of the best interest of a child does not require proof of any unique set of factors. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). However, courts are guided by the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Section 263.307(b) of the Family Code also "lists thirteen similar factors for determining the parents' willingness and ability to provide a safe environment." *In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing FAM. § 263.307(b)). Evidence that proves one or more statutory grounds for termination may also constitute evidence that termination is in the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *C.J.O.*, 325 S.W.3d at 266.

Appellant is the father of K.D. and V.P.D. The children have different mothers. Because she lacked financial stability, V.P.D.'s mother left V.P.D. with Appellant. After K.D. was physically abused by her mother, the Department of

Family and Protective Services removed K.D. from her mother's care and placed her with Appellant.

In April 2018, Appellant began an online conversation with a person he believed to be a fourteen-year-old girl, but was actually City of Sweetwater Police Officer Cory Stroman. Appellant stated in the conversation that he was smoking marihuana and that some people get "turned on" from using marihuana. Appellant made sexual overtures in the conversation that culminated in an agreement to meet at approximately 11:30 p.m. Appellant suggested that the fourteen-year-old girl shave and masturbate prior to the meeting and not wear a bra.

Appellant stopped briefly at the meeting site, but drove away when Officer Stroman activated the lights on his police car. Appellant was arrested approximately two blocks from the meeting site. Appellant indicated to Officer Stroman that Appellant was there "to save the child" and that "he felt the child was somehow in distress."

Officer Stroman performed an inventory search of Appellant's car and found two car seats. Only at that point did Appellant tell Officer Stroman that K.D., who was five years old, and V.P.D., who was three years old, were home alone. It was subsequently determined that the children had been left alone on previous occasions when Appellant took his fiancée, who is now his wife, to work.

The Department removed the children from Appellant's home and placed them with V.P.D.'s maternal grandparents, who were also K.D.'s step-grandparents. The Department filed a Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. The Department's primary goal in the case was family reunification, but it had a concurrent goal of relative adoption.

The trial court ordered Appellant to participate in certain services, including a psychological evaluation, counseling, parenting classes, and a drug and alcohol dependency assessment. Appellant completed all the ordered services. He also attended every scheduled visitation with the children and called the children almost every day. However, during some of the telephone conversations, Appellant played video games rather than focusing on the children.

In November 2018, Appellant pleaded guilty to a charge of online solicitation of a minor. Appellant was placed on deferred adjudication community supervision for six years, required to register as a sex offender, and ordered to participate in sex offender counseling. Appellant told the judge during the plea hearing that the situation "snowballed," that it was "stupid," and that he "lost everything." During the criminal proceedings, Appellant's wife minimized Appellant's conduct and stated that Appellant had been "targeted" by the police and was not a sex offender.

After the children were removed from Appellant's care, V.P.D.'s mother began living with Appellant and his wife. V.P.D.'s mother moved out after she failed to complete her court-ordered services, repeatedly tested positive for marihuana, and indicated that she did not intend to stop smoking marihuana. Appellant subsequently allowed another individual to move in with Appellant and his wife. Appellant intended for this individual to provide financial assistance and to eventually provide childcare. Appellant's new roommate made multiple online postings about smoking marihuana. Appellant required the new roommate to move out only after the Department indicated that the children would not be returned if the roommate continued to live with Appellant.

Shortly before the final hearing in April 2019, the children's guardian and attorney ad litem filed a counterpetition to terminate the parental rights of the mothers of the children and of Appellant. At the hearing, Britni Webb, a caseworker

for the Department, testified that the Department's initial plan of reunification had failed and that the Department requested termination of the parental rights of the children's mothers and of Appellant. The children's mothers signed Affidavits of Voluntary Relinquishment of their parental rights.

During the hearing, Appellant testified about the online conversation that led to the criminal charges. Appellant admitted that having sex was "kind of where the conversation was going," but Appellant claimed that he changed his mind on his way to meet the fourteen-year-old child and drove past the meeting place. Appellant testified that he initially had "a problem seeing what [he] had done was wrong" but that he now believed that he needed to change his behavior. Appellant stated that he believed that treatment was warranted, that he was undergoing sex offender counseling as part of his probation, and that he was receiving counseling at MHMR. According to Appellant, he was not "minimizing" that what he did was "severely wrong."

Webb testified that Appellant had "checked all the boxes" on his service plan. However, the purpose of the services was to bring about behavior change, and Appellant needed to demonstrate that he had learned from the services. Webb did not believe that Appellant had learned from the services, was willing to change his behavior, or had addressed the underlying issues that led to the removal of the children. In Webb's opinion, Appellant had not demonstrated the necessary behavior changes to prevent future harm to the children.

Webb specifically pointed to Appellant's "excuses" for "the issue that led to the removal of the children," his "minimiz[ation]" of the situation, and his failure to admit to the problem and develop a plan to "fix it." Webb testified that Appellant had not provided an adequate plan that would ensure that the children were not left home alone. Webb also noted that Appellant had not "worked through," with the

6

Department, what led him to solicit sex from a child. Rather, he told the Department that it was an "unfortunate incident"; that he knew it looked bad, but he was trying to help somebody; and that he was being "catfished." Webb testified that, if Appellant had admitted that the solicitation of sex from a fourteen-year-old was wrong, she would have directed him to a counselor for individual help to address the situation. Based on her conversations with the counselor that provided sex offender counseling to Appellant as part of his probation, Webb did not believe that Appellant had addressed the issue in the group sessions. Webb testified that Appellant's statements during the hearing were the first time that he had indicated that he might have a legitimate problem that needed to be addressed.

When the children began living with their grandparents, K.D. had separation anxiety, night terrors, and issues with wetting the bed. According to K.D.'s grandfather, K.D. could not be alone and would repeatedly confirm that either he or his wife was in the house. K.D. was also on medication to help her sleep, for PTSD, and for ADHD. K.D. had a negative self-image and would make comments such as she was a "bad kid," her mother was bad, and she was bad. In K.D.'s grandfather's opinion, K.D. had been told these things by someone else.

V.P.D. had delayed speech when he was placed into his grandparents' care. V.P.D. also had occasional incontinence. He was a "bully" at his daycare and hit and bit the other children.

At the time of the hearing, the children had been living with their grandparents for a year. K.D. was an "A student" at school. Although she still wet the bed on occasion, K.D. usually slept through the night and had bad dreams only about once per month. K.D. was no longer taking medication to help her sleep or for PTSD and was receiving the "lowest dosage" of ADHD medication. K.D. also no longer made

7

self-deprecating comments. K.D. had expressed specific concerns to her grandfather about being returned to Appellant.

V.P.D. had been placed into speech therapy and was much easier to understand. V.P.D.'s behavior at the daycare had improved. Although V.P.D. still occasionally hit or bit other children, the behavior was in response to V.P.D. being "picked on," rather than V.P.D.'s instigation of the conduct. V.P.D. still had issues with incontinence, but only during and after visits with Appellant.

Webb testified that she did not believe that the children's progress would continue if they were returned to Appellant and that the Department intended for the children to be adopted by their grandparents. Appellant testified that he had concerns about the children's grandparents having custody of the children. Appellant pointed out that the grandparents had two children, V.P.D.'s mother and a son. V.P.D.'s mother had problems with drugs, and the grandparents' son had problems with drugs and anger issues. Appellant also believed that the grandparents' house was not clean and that the children were allergic to the animals in the house.

The trial court found that Appellant had engaged in conduct that endangered the children pursuant to Section 161.001(b)(1)(D) and (E) and that termination of Appellant's parental rights was in the children's best interest. Appellant filed a motion for new trial in which he asserted that he was not prepared to present all his evidence at trial because the Department led him to believe that it was seeking reunification, not termination, and that he had evidence to rebut certain evidence offered by the Department. Appellant did not request a hearing in the motion for new trial, and the record does not reflect that the trial court held a hearing. The motion for new trial was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c).

In his first issue, Appellant asserts that the evidence is legally and factually insufficient to support the trial court's finding that termination of Appellant's parental rights was in the best interest of the children.

We have considered the record as it relates to K.D.'s concerns about returning to Appellant's home; the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parental abilities of Appellant and of the children's grandparents; the Department's plans for the children; Appellant's decision to leave the children alone on more than one occasion and the impact that being left alone had had on the children, particularly K.D.; Appellant's decision to leave the children alone to meet what he thought was a fourteen-year-old child in order to smoke marihuana and have sex; Appellant's failure at the time of his arrest to immediately inform the police officer that the children were home alone; Appellant's minimization of his conduct and failure to address the reasons for his conduct to the Department's satisfaction; Appellant's choice during the pendency of the case to allow individuals who used drugs to live with him; the effect that visits with Appellant had on V.P.D.'s behavior; the bond that the children had with their grandparents; and the psychological and physical improvements the children had demonstrated while in their grandparents' care. Based on the clear and convincing evidence presented at trial, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of each of the children. *See* FAM. § 263.307(b); *Holley*, 544 S.W.2d at 371–72.

We hold that the evidence is legally and factually sufficient to support the trial court's findings that termination of Appellant's parental rights is in K.D.'s and V.P.D.'s best interest. *See* FAM. § 263.307(b); *Holley*, 544 S.W.2d at 371–72. We overrule Appellant's first issue.

9

In his second issue, Appellant asserts that the trial court erred when it failed to hold a hearing on Appellant's motion for new trial. Generally, the decision to hold an evidentiary hearing on a motion for new trial in a civil case is within the trial court's discretion. *Hamilton v. Pechacek*, 319 S.W.3d 801, 807 (Tex. App.—Fort Worth 2010, no pet.); *Landis v. Landis*, 307 S.W.3d 393, 394 (Tex. App.—San Antonio 2009, no pet.). A trial court is required to conduct a hearing only after it is requested by a party and the motion for new trial presents a question of fact upon which evidence must be heard. *Hensley v. Salinas*, 583 S.W.2d 617, 618 (Tex. 1979) (per curiam).

Here, Appellant did not request a hearing in the motion for new trial, and the record does not contain any other request by Appellant for a hearing on the motion. If the movant fails to call his motion to the attention of the trial court through a request for a hearing, the trial court does not abuse its discretion when it fails to hold a hearing on the motion. *Felt v. Comerica Bank*, 401 S.W.3d 802, 808 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *In re A.C.*, 387 S.W.3d 673, 679 (Tex. App.—Texarkana 2012, pet. denied) ("Counsel is not now in a position to complain that the [trial] court erred by failing to conduct a hearing that was not requested.").

Further, Appellant moved for a new trial on the ground that he was surprised by the Department's request that his parental rights be terminated. However, in its original petition, the Department requested termination of Appellant's parental rights, and the children's ad litem filed a separate petition in which she requested that Appellant's parental rights be terminated. Appellant's complaint in the motion for new trial that he was not prepared to present rebuttal evidence that was in his possession at the time of trial does not raise new facts upon which a hearing would be mandated. *See Neyland v. Raymond*, 324 S.W.3d 646, 652–53 (Tex. App.—Fort Worth 2010, no pet.) (concluding that trial court did not abuse its discretion when it

did not hold a hearing on motion for new trial when motion failed to show due diligence to obtain evidence); *see also In re T.N.S.*, No.11-18-00193-CV, 2019 WL 694161, at *2 (Tex. App.—Eastland Feb. 14, 2019, pet. denied) (mem. op.) (concluding that trial court was not required to hold a hearing on motion for new trial in parental termination case when the motion did not present a question of fact upon which evidence must be heard).

We conclude that the trial court did not abuse its discretion when it did not hold a hearing on Appellant's motion for new trial. We overrule Appellant's second issue.

We affirm the trial court's order of termination.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


November 14, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.