

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00017-CV

———————————————————

S.L., Appellant

V.

S.L., Appellee

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-613438-17

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant S.L. (Mother) appeals from the trial court's judgment granting her requested divorce from Appellee S.L. (Father), naming her the joint managing conservator with the exclusive right to designate their son C.L.'s primary residence, ordering her to pay Father child support, and dividing the community estate. In three issues, Mother complains that the trial court reversibly erred by not filing findings of fact and conclusions of law and statutory findings regarding the child-support order, that the trial court abused its discretion by ordering her to pay Father child support, and that the trial court abused its discretion by awarding Father a disproportionate share of the community estate. Because we hold that the trial court did not reversibly err, we affirm the trial court's judgment.

## I. Background

Mother and Father were married in 2002, and C.L. was born in 2007. For C.L.'s entire life, Mother, a registered nurse in the pediatric intensive-care unit at Cook Children's Medical Center, had regularly worked three twelve-hour shifts from Friday night through Monday morning each week. Father took care of C.L. on the weekends while Mother worked and slept, and Mother took C.L. to school and managed his daily life while Father worked Monday through Friday. Both parents helped C.L. with his homework at night.

Mother had always had a significantly higher salary than Father, and she paid all the bills from the couple's earnings and controlled all the finances. She began having an

affair in late 2015, and Father discovered the affair a few months later. Mother filed her original petition for divorce in February 2017, alleging the ground of insupportability and asking the trial court to divide the community estate. In her amended petition, Mother asked that the trial court divide the community estate in a "just and right" manner according to Texas law; she also requested that she and Father be appointed joint managing conservators of C.L. Mother did not seek child support in her amended petition.

In Father's counterpetition, he likewise alleged insupportability, requested a "just and right" division of the community estate, and requested joint managing conservatorship. However, he additionally sought to be named the parent with the exclusive right to designate C.L.'s primary residence and asked for child support. In Father's amended counterpetition, he added the divorce ground of adultery; in his second amended counterpetition, he added a spousal-maintenance request, sought a 50/50 possession schedule as an alternative to his request to be named the parent with the exclusive right to designate C.L.'s primary residence, and requested a disproportionate share of the community estate on the following grounds:

a. fault in the breakup of the marriage;

b. benefits [Father] may have derived from the continuation of the marriage;

c. disparity of [Father's and Mother's] earning power . . . and their abilit[ies] to support themselves;

d. the spouse to whom conservatorship of the child is granted;

3

e.     [C.L.'s] needs . . . ;

f.     [Mother's and Father's relative] earning power, business opportunities, capacities, and abilities . . . ; and

g.     need for future support.

The bench trial occurred in August 2018. Only Mother, Father, and their respective lawyers testified. The parties stipulated to the admissibility of their exhibits—including proposed parenting plans, proposed property divisions, inventories and appraisements, child-support computations, income-and-expense statements, and information on assets, debts, and taxes.

The trial judge issued a letter ruling two days after the trial. In the letter ruling, the trial court

- named Mother the joint managing conservator with the exclusive rights to designate C.L.'s primary residence, to designate his healthcare providers, and (after consultation with Father) to make decisions about C.L.'s education;

- named Mother the joint managing conservator with the independent rights, after consultation with Father, to consent to medical, dental, and surgical treatment involving invasive procedures; to consent to psychological and psychiatric treatment; and to consent to marriage and to enlistment in the armed forces;

- named Father the joint managing conservator with the right to receive child support;

- awarded Father possession of C.L. pursuant to a modified possession schedule (1) on the first, second, fourth, and fifth weekends; (2) on the third Friday of each month beginning at 3:00 p.m. and ending at 7:00 a.m. on that following Saturday morning; (3) for two weeks exclusive of Mother during the summer; and (4) on holidays as provided in a standard possession order;

4

- awarded Mother possession of C.L. at all other times not awarded to Father;

- awarded each parent a right of first refusal, ordering that if either parent would be absent from the child for longer than eight consecutive hours while in possession of the child, then the parent would give the other parent the right of first refusal to care for the child;

- ordered Mother to pay Father monthly child support of $1,000 and to provide health insurance coverage for C.L.;

- ordered the marital home sold, and the net sales proceeds to be first applied to certain credit-card debt and then split 40%/60% between Mother and Father respectively, with Mother paying 60% of the IRS income-tax debt out of her share and Father paying 40% of the IRS income-tax debt plus his remaining medical bills out of his share;

- awarded Father 100% of his retirement plan;[1] and

- awarded Father $224,380 from Mother's retirement plan.[2]

Two days after the letter ruling, Mother requested findings of fact and conclusions of law as well as statutory findings on the child-support order.

Mother's counsel prepared the final divorce decree as directed by the trial court in the letter ruling. The trial judge signed the decree on October 24, 2018. Unlike the letter ruling, the decree gave both parents the right to receive child support.

Mother filed her notice of past due findings of fact and conclusions of law on November 29, 2018. The trial court did not issue any. Mother timely filed her notice of appeal.

---

[1]Father's retirement account had a balance of $21,738.

[2]Mother's retirement account had a balance of $402,000.

5

## II. Discussion

### A. Mother's Obligation to Pay Father Child Support

In her second issue, Mother complains that the trial court abused its discretion by ordering her to pay Father child support even though she was named the joint managing conservator with the exclusive right to determine C.L.'s primary residence. We will not reverse a trial court's child-support order absent an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

A trial court abuses its discretion if it acts arbitrarily or unreasonably or does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). Whether the evidence supporting the trial court's decision is legally and factually sufficient is relevant in deciding whether the trial court abused its discretion. *In re P.S.*, 505 S.W.3d 106, 109 (Tex. App.—Fort Worth 2016, no pet.). Accordingly, in determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we ask whether (1) the trial court had enough information upon which to exercise its discretion and (2) the trial court erred in applying its discretion. *Neyland v. Raymond*, 324 S.W.3d 646, 649–650 (Tex. App.—Fort Worth 2010, no pet.). The applicable sufficiency review comes into play in answering the first question. *Id.* at 649–50. Concerning the second question, we determine, based on the elicited evidence, whether the trial court made a reasonable decision. *Id.* at 650. A trial court does not abuse its discretion by basing its decision on conflicting evidence if some evidence supports its decision. *Unifund CCR Partners v.*

*Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding); *see In re E.P.C.*, 381 S.W.3d 670, 688 (Tex. App.—Fort Worth 2012, no pet.) (en banc) ("The evidence . . . is obviously conflicting, but we do not resolve the conflicts, for that is within the factfinder's province.").

Parents have a legal duty to support their minor children. Tex. Fam. Code Ann. § 151.003; *Iliff*, 339 S.W.3d at 81; *In re W.B.B.*, No. 05-17-00384-CV, 2018 WL 3434588, at *6 (Tex. App.—Dallas July 17, 2018, no pet.) (mem. op.). "The appointment of joint managing conservators does not impair or limit the authority of the court to order a joint managing conservator to pay child support to another joint managing conservator." Tex. Fam. Code Ann. § 153.138; *see In re A.R.W.*, No. 05-18-00201-CV, 2019 WL 6317870, at *3 (Tex. App.—Dallas Nov. 26, 2019, no pet.) (mem. op. on reh'g). A trial court's chief consideration when making a child-support decision must always be the child's best interest. *Iliff*, 339 S.W.3d at 81; *A.R.W.*, 2019 WL 6317870, at *3. A second principle guiding the trial court's child-support decision is that a function of child support is to "help *a* custodial parent maintain an adequate standard of living for the child." *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991) (emphasis added); *see A.R.W.*, 2019 WL 6317870, at *3 (quoting and emphasizing same).

As our sister court in Dallas explained last year in *A.R.W.*, a case (like this one) in which the joint managing conservator with the exclusive right to determine the child's primary residence was ordered to pay child support to the other parent who had modified possession of the child,

7

[T]he Family Code does not require that the parent with primary custody automatically be considered the child-support obligee. . . . [A]mong the infinite number of combinations and permutations of circumstances in which divorced parents might find themselves, one of them is where the parent without primary custody of the child needs financial assistance from the other parent to provide what a trial court—having absorbed all of the evidence in the first instance—considers to be adequate living accommodations while the child is living in that parent's abode. It is not hard to imagine situations where this result can occur. By granting trial courts discretion to establish support obligations in the child's best interest, Tex. Fam. Code [Ann.] § 154.123(b)(17), the Family Code gives trial courts the ability to fashion appropriate resource allocations to determine "an equitable amount of child support" depending on the particular facts and circumstances in those individual situations, *id.* § 154.121. Indeed, the Family Code provides that "[t]he court may order either or both parents to support a child in the manner specified by the order." *Id.* § 154.001(a).

Thus, the question is not whether the trial court had the power to require a parent with whom the child lives most of the time to provide support to the other parent so the child could have a proper living environment while at the other parent's house; rather, the issue is whether there is record evidence from which the trial court could reasonably have done so in this case.

2019 WL 6317870, at *1–2 (selected internal quotation marks omitted).

Like the evidence in *A.R.W.*, the evidence in this case is sufficient to support the trial court's decision to award the parent without the exclusive right to determine the child's primary residence—here, Father—child support. The trial court heard evidence that

- Mother had always earned significantly more than Father during the marriage;

- Father's annual gross income was less than 25% of Mother's average gross income of the three years before the trial;

8

- Father's monthly expenses were higher than his monthly income;

- Mother had no knowledge of Father's receiving job offers for higher pay;

- Father would need five years to go back to college for a more lucrative career;

- Mother knew that Father was financially strapped;

- While the divorce was pending, Mother paid Father's bills and gave him cash to spend;

- While the divorce was pending, Father could not afford to take C.L. to activities that cost money. Father asked Mother for money, but she refused;

- Mother wanted Father to have more and different possession of C.L. than a standard possession schedule would have given him;

- Mother wanted C.L. to have a "good lifestyle" when he was with Father and a comparable lifestyle in both homes, if possible;

- Mother worked Friday, Saturday, and Sunday nights of each week from 7:00 p.m. to 7:00 a.m. the next morning and worked sometimes during the week; and

- Father worked Monday through Friday, from 9:00 a.m. to anywhere between 2:00 p.m. and 7:00 p.m., except he was off the Friday before and the Monday after the third weekend and was on-call during the third weekend.

The evidence that Mother's average monthly income far outweighed Father's, that his monthly expenses exceeded his monthly income, that Father wanted to provide C.L.'s primary residence, that Mother wanted Father to have modified possession of C.L., that Father could not afford to pay for C.L.'s activities when C.L. was with him on weekends, and that Mother wanted C.L. to have a comparable living situation in both homes if possible supports the trial court's ordering Mother to pay Father child support

9

and the trial court's implicit findings that Mother's paying Father child support would serve C.L.'s best interest and ensure C.L. an adequate standard of living during Father's periods of possession. *See id.* at \*7–9.

Mother relies on a case in which the trial court abused its discretion by ordering a sole managing conservator to pay child support to a possessory conservator. *Lueg v. Lueg*, 976 S.W.2d 308, 313 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied). Despite some similarities in the division of parental rights and duties, that case is inapposite because Mother and Father are joint managing conservators. *See Lowe v. Roberts*, No. 14-10-01191-CV, 2012 WL 50617, at \*2 (Tex. App.—Houston [14th Dist.] Jan 10, 2012, no pet.) (mem. op.). Although as between the sole managing conservator and the possessory conservator, the Family Code gives only the sole managing conservator the express right to receive child support, *compare* Tex. Fam. Code Ann. § 153.132(4), *with id.* § 153.192, the Family Code gives the trial court authority to order one joint managing conservator—even one who has the exclusive right to determine a child's primary residence and who has possession of the child the majority of the time— to pay child support to the other joint managing conservator. *See id.* §§ 153.134(b)(2), 153.138; *A.R.W.*, 2019 WL 6317870, at \*9. The trial court had sufficient evidence upon which to base its order that Mother pay Father child support. That evidence, the modified possession schedule, and the joint-managing-conservatorship designation show that the decision was reasonable. We therefore hold that the trial court did not

abuse its discretion by ordering Mother to pay Father child support, and we overrule her second issue.

## B. Absence of Findings of Fact and Conclusions of Law

In her first issue, Mother complains that the trial court reversibly erred by failing to file findings of fact and conclusions of law and statutory findings on the child-support order. Because Mother filed her notice of past due findings of fact and conclusions of law too late, she has waived any complaint regarding the findings of fact and conclusions of law under Rule of Civil Procedure 296. As for the Family Code Section 154.130 findings supporting the child-support order, Mother timely requested them, and the trial court did not make them or incorporate them into the divorce decree. The trial court therefore erred by not making them. However, the error was harmless.

### 1. Waived Findings of Fact and Conclusions of Law
### Under Rule of Civil Procedure 296

After a bench trial, a party may request that the trial court issue separate written findings of fact and conclusions of law. Tex. R. Civ. P. 296. The party must file its request within twenty days after the signing of the judgment. *Id.* If the party files its request for findings of fact and conclusions of law before the trial court signs the judgment, the request "shall be deemed to have been filed on the date of but subsequent to the time" the judgment was signed. Tex. R. Civ. P. 306c. If the trial court does not file its findings of fact and conclusions of law within twenty days after the party's timely

request, then the party must file a "Notice of Past Due Findings of Fact and Conclusions of Law" within thirty days of its original request. Tex. R. Civ. P. 297. Otherwise, the party waives its appellate complaint of the trial court's failure to file findings of fact and conclusions of law. *Jimenez v. McGeary*, 542 S.W.3d 810, 812 (Tex. App.—Fort Worth 2018, pet. denied); *see also Las Vegas Pecan & Cattle Co., Inc. v. Zavala Cty.*, 682 S.W.2d 254, 255–56 (Tex. 1984) (applying former procedural rules).

The trial court rendered judgment by letter on August 8, 2018. Mother timely filed her request for findings of fact and conclusions of law under Rule 296 on August 10, 2018. *See* Tex. R. Civ. P. 296, 306c. The trial court signed the final decree on October 24, 2018; we therefore deem Mother's request for findings of fact and conclusions of law to have been filed on that same date. *See* Tex. R. Civ. P. 306c. Thus, the trial court's findings of fact and conclusions of law were due twenty days later—November 13, 2018. *See* Tex. R. Civ. P. 297. After the trial court did not issue them, Mother's notice of past due findings of fact and conclusions of law was due November 23, 2018, thirty days after the date of her deemed request. *See id.*; Tex. R. Civ. P. 306c; *Cobb v. Cobb*, No. 03-14-00325-CV, 2016 WL 3136886, at *3 (Tex. App.—Austin June 3, 2016, pet. denied) (mem. op.). However, Mother did not file her notice of past due findings and conclusions until November 29, 2018, which was untimely. *See* Tex. R. Civ. P. 297. Mother has therefore waived error as to the absence of findings of fact and conclusions of law under Rule 296. *See In re T.M.*, No. 02-19-00114-CV, 2019 WL 4010226, at *6 (Tex. App.—Fort Worth Aug. 26, 2019, pet. denied) (mem. op.); *In re E.M.T.*,

No. 04-18-00805-CV, 2019 WL 1370323, at *3 (Tex. App.—San Antonio Mar. 27, 2019, no pet.) (mem. op.); *Watts v. Oliver*, 396 S.W.3d 124, 131 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Las Vegas Pecan*, 682 S.W.2d at 256.

### 2. Erroneously Omitted Findings Under Family Code Section 154.130

### a. The Error

Family Code Section 154.130 provides the following regarding child-support findings:

(a)     Without regard to Rules 296 through 299, Texas Rules of Civil Procedure, in rendering an order of child support, the court shall make the findings required by Subsection (b) if:

(1)     a party files a written request with the court before the final order is signed, but not later than 20 days after the date of rendition of the order;

(2)     a party makes an oral request in open court during the hearing; or

(3)     the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines under Section 154.125 or 154.129, as applicable.

. . . .

(b)     If findings are required by this section, the court shall state whether the application of the guidelines would be unjust or inappropriate and shall state the following in the child[-]support order:

"(1)     the net resources of the obligor per month are $_____;

"(2)     the net resources of the obligee per month are $_____;

"(3)     the percentage applied to the obligor's net resources for child support is _____%; and

13

> "(4)    if applicable, the specific reasons that the amount of child support per month ordered by the court varies from the amount computed by applying the percentage guidelines under Section 154.125 or 154.129, as applicable."
>
> (c)    Findings under Subsection (b)(2) are required only if evidence of the monthly net resources of the obligee has been offered.

Tex. Fam. Code Ann. § 154.130.

On August 10, 2018, two days after the trial court's rendition by letter, Mother timely filed a written request for findings under Section 154.130. *See* Tex. Fam. Code Ann. § 154.130(a)(1), (3). Rules of Civil Procedure 296 through 299 did not apply to this request for findings. *Id.* § 154.130(a). Mother's late notice of past due findings thus did not waive her complaint under Section 154.130. *See id.*; *Champenoy v. Champenoy*, No. 01-12-00668-CV, 2013 WL 3327328, at *5 n.4 (Tex. App.—Houston [1st Dist.] June 27, 2013, no pet.) (mem. op.). The trial court therefore erred by not making the Section 154.130(b) findings. *See In re Q.D.S.*, No. 04-17-00105-CV, 2018 WL 1831686, at *9 (Tex. App.—San Antonio Apr. 18, 2018, no pet.) (mem. op.).

### b. No Harm

In the case before us, which harm standard to apply is not clear. Mother contends that harm is presumed, relying on *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). In *Tenery*, the Supreme Court of Texas held that under Rule 296, when the trial court fails to make findings after a timely, proper request, "harm . . . is presumed unless the contrary appears on the face of the record." *Id.* The Supreme Court further held that "[e]rror is harmful if it prevents an appellant from properly presenting a case to the

14

appellate court." *Id.* (relying on former Rule of Appellate Procedure 81(b)). In *Tenery*, the Supreme Court held that the error was harmful because it "prevented [the appellant] from effectively contesting the trial court's deviations from the guidelines." *Id.*

However, in *B.F. v. A.F.*, this court distinguished *Tenery*, explaining that the Supreme Court applied the presumed-harm analysis of Rule 296 in *Tenery* because the appellant in that case timely requested findings under that rule. *B.F. v. A.F.*, No. 02-16-00133-CV, 2017 WL 2375767, at \*3 (Tex. App.—Fort Worth June 1, 2017, no pet.) (mem. op.). In *B.F.*, the appellant did not request findings under Rule 296 or under Section 154.130; this court therefore held that Rule 296's presumed-harm analysis was inapplicable and applied Rule of Appellate Procedure 44.1(a) to determine any error harmless. *Id.*

Here, Mother waived error regarding her requested findings under Section 296 by filing her notice of past due findings too late. *See* Tex. R. Civ. P. 297; *T.M.*, 2019 WL 4010226, at \*6; *Watts*, 396 S.W.3d at 131; *see also Las Vegas Pecan*, 682 S.W.2d at 256. However, she preserved her complaint about the omitted Section 154.130 findings. Mother's complaint therefore does not fall neatly within either the *Tenery* parameters or those of *B.F.* for assessing harm. We do not need to decide whether to apply the presumed-harm analysis of Rule 296 and *Tenery* or Rule 44.1(a) to measure harm in this case, though, because under either standard, the trial court's error is harmless.

Under *Tenery*, we presume harm unless the record shows otherwise, and error is harmful if it stops an appellant from properly presenting her case on appeal. *Tenery*, 932 S.W.2d at 30. Under Rule 44.1(a), we will not reverse the trial court's judgment because of a legal error unless that error "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to" this court. Tex. R. App. P. 44.1(a); *see also Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 225 (Tex. 2005).

Mother contends that the trial court gave no reason for awarding Father child support and no reason for the award's amount. A finding justifying a child-support award to Father would not be a Section 154.130 finding because child-support guidelines do not dictate the recipient of child support. *See* Tex. Fam. Code Ann. §§ 153.138, 154.130. Mother waived all findings except Section 154.130 findings. Nevertheless, as we held above, the trial court did not abuse its discretion by awarding Father child support because the evidence substantiated it. Mother was able to brief the issue; we addressed it and held that the trial court's decision was not improper. Mother therefore does not show harm on that ground. *See* Tex. R. App. 44.1(a); *Tenery*, 932 S.W.2d at 30.

Mother also cannot show that the absence of findings about the amount of that award—$1,000 per month—harmed her because (1) the absence of findings did not block her from effectively challenging the amount of the award on appeal (although she does so within her complaint about the omitted findings) and (2) the evidence supports

16

imposing an even higher monthly child-support obligation on her. Under the child-support guidelines, an obligor's child support is 20% of the obligor's net resources when those net resources do not exceed $8,550. Tex. Fam. Code Ann. § 154.125; 38 Tex. Reg. 4647, 4647 (2013) (Off. of the Att'y Gen.); *Ngwu v. Toni*, No. 04-18-00762-CV, 2019 WL 3307913, at *3 & n.2 (Tex. App.—San Antonio July 24, 2019, pet. denied) (mem. op.). Resources in this case include 100 percent of income less social security taxes, federal income taxes, and health insurance expenses for the child. *See* Tex. Fam. Code Ann. § 154.062(a), (b)(1), (d). Mother included the following computation of her net resources in her financial information:

**Monthly Income**

| | |
|---|---|
| Gross Income (from Primary Employment) | $9,171.71 |
| Withholding/FICA | (1,325.14) |
| Health Insurance | (607.72) |
| Net Monthly Resources | $7,238.95 |

Mother based her monthly gross income on the income she received for two months' work in 2018 from Cook Children's, which was thousands less than her average monthly income the previous year.[3] Even if we accept that number, Family Code Section 154.062 allows the trial court to deduct only the child's insurance costs, not the

---

[3]Mother had a smaller, second job where she worked on an as-needed basis. That income would not affect our disposition of Mother's issues; we therefore do not address it.

parent's, in the net-resources computation. *See id.* § 154.062(d)(5). The parties stipulated that C.L.'s monthly health insurance premium was $235.38. From looking at the information Mother provided for 2015, 2016, and 2017, the amount she included for health insurance in her financial statement appears to include family insurance costs. When we make that correction to Mother's financial statement, her net resources are $7,611.29. Twenty percent of that number is $1,522.26. *See id.* § 154.125. However, the trial court ordered Mother to pay only $1,000 in monthly child support.

Family Code Section 154.123(b) provides a list of factors trial courts shall consider in determining that child support in an amount established by the guidelines would be unjust or inappropriate. Tex. Fam. Code Ann. 154.123(b). Relevant factors in this case include:

(1)     the age and needs of the child;

(2)     the ability of the parents to contribute to the support of the child;

. . .

(4)     the amount of time of possession of and access to a child;

(5)     the amount of the obligee's net resources, . . . ;

. . .

(10)     whether the obligor or obligee has an automobile . . . or other benefits furnished by his . . . employer, another person, or a business entity;

. . .

(12)     provision for health care insurance and payment of uninsured medical expenses;

(13) special or extraordinary educational, health care, or other expenses of the parties or of the child;

. . .

(16) debts or debt service assumed by either party; and

(17) any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents.

*Id.*

The evidence at trial showed that C.L. was ten years old, was active in Boy Scouts, played baseball, and had attended private school but would soon begin public school. Mother's actual time with C.L. during the school year was mainly school nights, while Father spent most weekends with him. Mother provided and would continue to provide C.L.'s health insurance, but the trial court ordered his uninsured health expenses to be split evenly between both parents. Mother was charged with making mortgage and credit-card payments pending the sale of the family home (of which she was awarded exclusive possession), and then after the home sold, the community debt was to be paid off from the net sales proceeds. However, Father had accumulated debt in the seventeen months since their separation, which was his sole obligation, and he also planned to return to college about a year after trial to obtain a more lucrative career. Father's monthly expenses exceeded his income by almost $400 with no consideration of child support, and his expense statement allowed $50 per month for entertainment,

$100 per month for eating out, and $0 for extracurricular activities. However, his employer provided him with a vehicle, gasoline, and a cell phone.[4]

Father wanted the trial court to take his income into account in determining child support, and the trial court's decisions to award *each* parent the right to receive child support and to set Mother's child-support payment at $1,000 per month show that the trial court considered that information as well as the above evidence.[5] The trial court appears to have followed the child-support guidelines of 20% for both parents, implicitly making both parents obligors but subtracting Father's obligation from Mother's to arrive at a net child-support obligation by Mother. *See id.* § 154.123(b)(17); *A.R.W.*, 2019 WL 6317870, at *8–9. Examining the amounts Mother provided for her own net resources and the child support she sought from Father and the amounts Father provided for his net resources and the amount his child support should offset Mother's child-support obligation, we conclude that the trial court could have arrived at a monthly net child-support obligation of approximately $1,015 using either set of figures.

Even with child-support findings, Mother could not have shown that she was

---

[4]The record does not indicate whether Father's employer provided these for personal use.

[5]Courts may treat differences between a letter ruling and a final, signed decree as modifications within the trial court's plenary power. *In re Marriage of Anderton*, No. 07-11-00243-CV, 2013 WL 3355721, at *4 (Tex. App.—Amarillo June 26, 2013, no pet.) (mem. op.).

harmed by being ordered to pay less than guideline support, nor could she have shown that she was harmed by being ordered to pay $15 less per month than her own computations of her net resources and Father's proposed child-support obligation would have allowed. *See Walker v. Walker*, No. 02-13-00229-CV, 2014 WL 2619147, at *4 & n.2 (Tex. App.—Fort Worth June 12, 2014, pet. denied) (mem. op.). Because the record supports the trial court's rulings despite the absence of findings and because the absence of findings did not prevent Mother from effectively challenging the amount of child support in this court, Mother cannot show that the absence of statutory child-support findings harmed her under *Tenery*, 932 S.W.2d at 30, or under Rule 44.1(a), *see* Tex. R. App. 44.1(a); *Q.D.S.*, 2018 WL 1831686, at *8–9; *Walker*, 2014 WL 2619147, at *4 & n.2. We overrule her first issue.

## C. Division of the Community Estate

In her third issue, Mother contends that the trial court abused its discretion by awarding Father a disproportionate share of the community estate because the evidence is factually insufficient to support the decision. A trial court is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties. Tex. Fam. Code Ann. § 7.001; *Watson v. Watson*, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.); *Todd v. Todd*, 173 S.W.3d 126, 128–29 (Tex. App.—Fort Worth 2005, pet. denied). The trial court has broad discretion in making a just and right division, and absent a clear abuse of discretion, we will not disturb that division. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Todd*, 173 S.W.3d at 129. A party who

complains about the trial court's property division bears the burden of showing that the division was so unjust that the trial court abused its discretion. *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.) (op. on reh'g).

The law does not require a trial court to equally divide a community estate, but the division must be equitable. *Halleman v. Halleman*, 379 S.W.3d 443, 452 (Tex. App.—Fort Worth 2012, no pet.). A disproportionate division must be supported by some reasonable basis. *Smith v. Smith*, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.).

Nonexclusive factors that the trial court may consider in dividing the community estate include "the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property." *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). The trial court may also consider a spouse's dissipation of the community estate and any misuse of it, including fraud on the community. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589–90 (Tex. 1998); *Vannerson v. Vannerson,* 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Finally, the trial court may consider fault in the breakup of the marriage, although the division should not punish the party at fault. *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (citing *Young v. Young,* 609 S.W.2d 758, 761–762 (Tex. 1980)). No single factor is controlling. *Felix-Forbes v. Forbes*, No. 02-15-00121-CV, 2016 WL 3021829, at *2 (Tex. App.—Fort Worth May 26, 2016, no pet.) (mem. op.); *see, e.g.*, *Stafford v. Stafford*,

726 S.W.2d 14, 16 (Tex. 1987), *overruled on other grounds*, *Price v. Price*, 732 S.W.2d 316 (Tex. 1987). "In the end, [in a divorce in which a minor child is involved,] 'the court is to do complete equity as between the husband and wife and the child[], having due regard to all obligations of the spouses and to the probable future necessities of all concerned.'" *Bradshaw*, 555 S.W.3d at 543 (quoting *Hedtke v. Hedtke*, 248 S.W. 21, 22 (1923)).

Mother relies on *Hanson v. Hanson*, 672 S.W.2d 274, 277 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd), for the proposition that the law does not compel the trial court to award a spouse more than half the community estate even when that spouse has much less income or earning capacity than the other spouse. We agree with that proposition. Mother attempts, however, to transform that holding into a binding rule for this court that the trial court abuses its discretion by awarding a spouse a disproportionate share of the estate when that spouse does not present evidence of financial need. We reject this attempt and reiterate that we review the trial court's decision for an abuse of discretion, and no one factor drives that decision. *Jacobs*, 687 S.W.2d at 733; *Felix-Forbes*, 2016 WL 3021829, at *2.

The trial court received the following evidence pertinent to the division of the community estate:

- Mother had always earned significantly more than Father during the marriage;

- Mother's income at trial was at least four times Father's income;

- At his previous job, Father made $28,000 to $30,000 annually;

- Mother admitted that Father could not have supported himself on that salary;

- Father had taken a new job after the separation to make more money;

- Father's annual income at trial—$35,000—was the most he had ever made;

- Father's monthly expenses after he moved out of the family home outpaced his monthly income;

- Mother had no knowledge of Father receiving job offers for higher pay;

- Father would need five years to go back to college for a more lucrative career;

- Mother's career was already established;

- Father thought he should receive a disproportionate share of the retirement funds because Mother had the potential to "earn a lot more," while he needed to be able to provide for C.L. and himself until he could get another degree and begin to earn more;

- Mother admitted that she had the ability to make "quite [a] bit more income" than Father had;

- Mother had 100% control of the finances and investments during the marriage;

- During the marriage, Father had no idea how much money they had in the bank or how much debt they were in;

- Mother admitted to withdrawing $35,000 from her retirement account without informing Father;[6]

_____

[6]Mother testified that she had borrowed money from her retirement account on two occasions "in the last couple of years" and that the money had been used to pay household debt, to pay off Father's pickup, and to pay for surgeries. She did not support her testimony with any documentation. In any event, the reasons for and effects of these withdrawals on the community property division were credibility issues to be

- The parties estimated that the net sales proceeds from the sale of their house would be approximately $65,000 to $80,000 dollars;

- The parties had approximately $35,000 to $40,000 of credit-card debt before the divorce;[7]

- The couple owed the IRS almost $6,000;

- Father had $21,738 in his retirement account from his former job;

- Mother had $402,000 in her retirement account;

- Father sacrificed during the marriage to advance Mother's career;

- During the marriage, Father cared for their son every weekend while Mother worked her three twelve-hour shifts and slept;

- Mother's career took priority over their home life and over Father's career;

- Mother and Father grew apart because their work schedules did not give them much time together;

- Father was shocked and devastated when he found out about Mother's affair;

- Mother continued the affair while they attended counseling, and Father thought they were trying to reconcile;

- Father had not wanted a divorce;

- Father had not been prepared for the economic impact of the divorce;

---

determined by the trial court. *See, e.g.*, *Logsdon v. Logsdon*, No. 02-14-00045-CV, 2015 WL 7690034, at *8 (Tex. App.—Fort Worth Nov. 25, 2015, no pet.) (mem. op.); *Prentiss v. Prentiss*, No. 02-10-00476-CV, 2012 WL 858592, at *4 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.).

[7]Mother claimed that Father had a Citi credit card, ending in 0000, with a balance of $5,000, but Father denied it. The trial court awarded the debt to Mother. *See, e.g.*, *Logsdon*, 2015 WL 7690034, at *8; *Prentiss,* 2012 WL 858592, at *4.

- Mother admitted that but for her affair and her requesting the divorce, Father would still want to be married;

- If Father and Mother had stayed together, they had discussed his going back to school for an advanced degree so that he could begin a different career; and

- Father was forty-two years old at the time of divorce.

The evidence listed above is legally and factually sufficient to support the trial court's disproportionate division of the estate. The trial court properly considered Mother's decisions to have an affair and to ask for a divorce after a lengthy marriage, the disparity in Father's and Mother's current incomes and future earning capacities, Father's age relative to his ability to build a retirement in the future, Mother's total control of the finances and investments during the marriage, Mother's secretly borrowing from her retirement fund, the couple's high credit-card debt and federal income-tax debt, Father's need to support himself and C.L. even with Mother's child-support payments, and Father's additional need to fund his college plans while supporting himself and C.L. Thus, the trial court had sufficient evidence upon which to base the disproportionate division of the community estate, and the record shows that the decision was reasonable. We therefore hold that the trial court did not abuse its discretion by making the unequal division. *See, e.g.*, *Felix-Forbes*, 2016 WL 3021829, at *5–6. We overrule Mother's third issue.

### III. Conclusion

Having overruled Mother's three issues, we affirm the trial court's judgment.

26

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  July 30, 2020